Charles **BLAND**, Jr., Petitioner–Appellee,

v.

**CALIFORNIA DEPARTMENT OF COR-RECTIONS; Attorney General of the State of California, Respondents–Appellants.**

No. 93–55766.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 1994.

Decided April 6, 1994.

---

David Glassman, Tricia Ann Bigelow, Deputy Attys. Gen., Los Angeles, CA, for respondents-appellants.

William S. Harris, Stewart & Harris, Pasadena, CA, for petitioner-appellee.

Before: BRIGHT,* WIGGINS, and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

## I

## OVERVIEW

The Director of the California Department of Corrections and the Attorney General of the State of California (collectively referred to as the "State") appeal the district court's grant of Charles Bland's (Bland) habeas petition:[1] The district court concluded that the state trial court denied Bland his Sixth Amendment right to obtain counsel of his choice. We affirm.

## II

## FACTS AND PROCEDURAL HISTORY

On February 4, 1987, three men in a blue and white Suzuki Jeep drove past a group of people standing at a bus stop in Inglewood, California. The men in the jeep were members of the street gang, the Cripps. Some of the people at the bus stop were members of the rival gang, the Bloods. One of the men in the jeep fired several shots into the group, wounding a bystander. A number of the eyewitnesses identified the driver as Dazarri Waller and the shooter as Shawn Gascon (also spelled Gaskin). The third occupant was subsequently identified as Darren Wannamaker.

---

* Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. Charles Bland, Jr. is referred to as "Bland"; Charles Bland, Sr. is referred to as "Mr. Bland."

Inglewood Police Detectives, Russell Enyeart and Stephen Young, were dispatched to the scene where they met Officer Rick Clark who had obtained statements from the witnesses. Based upon these statements, warrants were issued for the arrests of Waller and Gascon. Gascon waived his right to remain silent and told the officers that he had not been in the jeep. He stated that he had received a phone call from Wannamaker who had told him that Wannamaker and Bland were riding in Waller's jeep when several members of the Bloods threw bottles at them. After driving to Bland's house where Bland retrieved a gun, they drove back to find the gang members who had taunted them. Bland, the rear passenger, then fired four shots into the group, one of which wounded an innocent bystander who was waiting for the bus. Waller confirmed that Bland had fired the shots. During interrogation, Bland admitted having obtained the gun from his house and admitted that he was in the jeep; however, he denied firing the shots. When he took the stand at trial, he denied making those admissions.

The jury convicted Bland of attempted murder, personal use of a firearm, and the intentional infliction of great bodily injury with regard to the wounded bystander. Bland was also convicted of assault with a firearm and personal use of a firearm with respect to the intended victim. He was ultimately sentenced to life imprisonment plus seven years. Bland appealed to the California Court of Appeal (Second Appellate District, Division One) where he claimed that the trial court erred in denying his motion to discharge retained counsel. In his consolidated petition for habeas, he argued that he was denied effective assistance of counsel.[2] The Court of Appeal affirmed the convictions with a modification to the sentence. The California Supreme Court denied Bland's petition for review.

On September 17, 1991, Bland filed a habeas petition in the United States District Court for the Central District of California. The magistrate judge held an evidentiary hearing on one of Bland's claims, counsel's failure to seek suppression of inculpatory statements made by Bland following his arrest. On September 25, 1992, the magistrate judge filed his report recommending dismissal of the habeas petition. The district court declined to adopt that recommendation and granted the habeas petition on April 21, 1993, concluding that Bland was denied his right to discharge counsel in violation of the Sixth Amendment. The State appeals, contending that: (1) Bland failed to exhaust state remedies; (2) the district court erred in construing factual allegations contained in the declarations of Bland and his father as true; (3) the district court erred in holding that the state trial court denied Bland the right to discharge counsel; and (4) any alleged error was harmless. We affirm.

### III

### DISCUSSION

■ We review *de novo* the district court's decision to grant a habeas petition. *Thomas v. Brewer*, 923 F.2d 1361, 1364 (9th Cir.1991).

### A. *Exhaustion*

■ The State argues that Bland failed to exhaust his state remedies because the district court considered factually different claims than the California state courts considered.[3] We disagree. A state prisoner must exhaust his state remedies before petitioning for a writ of habeas corpus in federal court. *McQueary v. Blodgett*, 924 F.2d 829, 833 (9th Cir.1991). The federal habeas petitioner must "provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson v. Harless*, 459

---

**2.** He also raised several other issues not relevant to this appeal.

**3.** Bland contends that the State waived its right to raise the exhaustion claim on appeal because it failed to present that issue in the district court. When a state fails to raise the nonexhaustion defense in the district court, we may properly conclude that it waives that defense. *See Granberry v. Greer*, 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); *see also Brown v. Maass*, 11 F.3d 914 (9th Cir.1993). Because we conclude that Bland has exhausted his state remedies, we need not determine whether the State waived the nonexhaustion defense.

U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Id.* (internal citations omitted). In order to satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim to the state courts. *Id.; see also Hudson v. Rushen,* 686 F.2d 826, 830 (9th Cir.1982), *cert. denied,* 461 U.S. 916, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983). A federal claim "is fairly presented if the petitioner has described the operative facts and legal theory upon which his claim is based." *Tamapua v. Shimoda,* 796 F.2d 261, 262 (9th Cir.1986).

■ After reviewing the record, we are convinced that Bland has satisfied the exhaustion requirement. Not only did he present the operative facts in both the California Court of Appeal and the Supreme Court, but he presented the substance of his federal habeas claim to those courts. In both California courts, Bland argued that the state trial court had improperly denied his motion to discharge counsel in violation of his Sixth and Fourteenth Amendment rights. His Sixth Amendment right to counsel is at issue here. Because Bland presented the identical federal claim to the California appellate courts, he has fulfilled the exhaustion requirement.

The State contends that Bland failed to exhaust his claim because the district court relied upon facts not considered by the state courts. In particular, the State bases its argument upon several factual allegations contained in two declarations which the district court assumed to be true, the declaration of Bland's father, Charles Bland, Sr. (Mr. Bland), and the declaration of Bland himself. Those declarations reveal the following facts. Mr. Bland contacted Bland's attorney, Ronald Anderson, in June, 1987, to determine why Anderson had not contacted eyewitnesses who identified Gascon as the shooter. Because Mr. Bland was not satisfied with the way Anderson was handling the case, he told Anderson he was going to find another attorney. Mr. Bland did not retain another attorney and attempted to reach Anderson without success until the July 20,

1987, trial date. On that date, Mr. Bland asked the judge, on his son's behalf, to remove Anderson from the case, but the judge declined to do so. According to Bland's declaration, Anderson spent only 15–20 minutes with him prior to trial. Bland also claimed that Anderson pressured him to plead guilty. When Bland asked Anderson why he had not contacted several eyewitnesses (named in the police reports) who had identified Gascon as the shooter, Anderson responded: "What are you, a jailhouse lawyer?" Bland also stated that Anderson did not spend any time preparing him to take the witness stand. Finally, Bland's declaration states that he did not feel Anderson was concerned with his case and as a result, he spoke to Anderson, his parents and the judge about obtaining a new lawyer.

The State contends that Bland's denial of his right to discharge claim is unexhausted because the factual allegations contained in the two declarations and relied upon by the district court present a substantially different factual context than was presented in the state courts. This claim lacks merit. These same declarations were presented to the Court of Appeal as part of Bland's ineffective assistance of counsel claim raised in his consolidated habeas petition. In rejecting Bland's ineffective assistance of counsel claim, the Court of Appeal noted that this contention was "related" to his substitution of counsel claim. In addition, the Court of Appeal reviewed and considered both declarations before concluding that these facts failed to demonstrate inadequate assistance of counsel. When Bland appealed this decision to the California Supreme Court, he presented the same facts and referenced the same declarations. These were the same declarations relied upon by the district court.

Bland presented the operative facts and legal theories to both state appellate courts. Therefore, because the substance of his federal claim was fairly presented to and rejected by the California appellate courts, we conclude that Bland has satisfied the exhaustion requirement. *See Anderson,* 459 U.S. at 6, 103 S.Ct. at 277; *see also Hudson,* 686 F.2d at 830 (claim exhausted under state law "when the California Court of Appeal decided

it adversely to [defendant] and the California Supreme Court denied a hearing"). "On the record before it, the state court had a fair opportunity to consider the claim and to correct the asserted constitutional defect in the petitioner's conviction." *Hudson,* 686 F.2d at 830.

### B. *Truth of Declarations*

The State next argues that the district court erred in assuming the truth of the allegations contained in the declarations,[4] because the State never had the opportunity to refute those factual allegations. In a habeas proceeding, the State responds by return to a habeas petition only after the court issues an order to show cause. *See In re Sixto,* 48 Cal.3d 1247, 259 Cal.Rptr. 491, 492, 774 P.2d 164, 165 (1989). The State's return must allege facts tending to establish the legality of the petitioner's detention. The petitioner then responds by filing a traverse. *Id.* When the State's return fails to dispute the factual allegations contained in the petition and traverse, it essentially admits those allegations. *Id.* 259 Cal.Rptr. at 492–93, 774 P.2d at 165–66. Accordingly, the State argues, the allegations contained in the declarations cannot be deemed admitted because the California Court of Appeal did not issue an order to show cause.

The California Court of Appeal considered both declarations when it addressed Bland's ineffective assistance of counsel claim in the consolidated habeas proceeding, but nonetheless denied relief. Even though these facts are contained in the decision of the Court of Appeal and were drawn directly from the declarations, the State did not dispute those factual allegations in the district court. Nor did it request an evidentiary hearing to resolve any disputes. To the extent the State had a dispute with the facts as stated in the decision of Court of Appeal, it should have raised it in the district court. Accordingly, we find that the State waived this issue. *See Harris v. Pulley,* 885 F.2d

1354, 1367 (9th Cir.1988) (state waived abuse of writ argument because failed to raise it in district court), *cert. denied,* 493 U.S. 1051, 110 S.Ct. 854, 107 L.Ed.2d 848 (1990).

Although not explicitly stated, apparently the State is also arguing that these written findings in the Court of Appeal decision should not be presumed correct, *see* 28 U.S.C. § 2254(d),[5] either because the factual dispute was not resolved in the state court, or the material facts were not adequately developed. *See id.* § 2254(d)(1)–(3). Other than stating that these declarations are self-serving, the State does not argue that these facts are indeed erroneous. Nor does it assert why they are incorrect. Rather, it contends only that it did not have an opportunity to dispute them. Absent convincing evidence to the contrary, we defer to state court factual findings and we may set them aside only if they lack even fair support in the record. *See Marshall v. Lonberger,* 459 U.S. 422, 432, 103 S.Ct. 843, 849–50, 74 L.Ed.2d 646 (1983); *see also* § 2254(d).

Most importantly, the State concedes that it responded to Bland's ineffective assistance of counsel claim in the Court of Appeal, the context within which these declarations were made. Although this response may have been informal, it provided an opportunity for the State to refute any factual allegations contained in the declarations with which it disagreed.

### C. *Right to Discharge Counsel*

#### 1. Factual Background

Mr. Bland hired Ronald Anderson to represent Bland and the case was set for trial on July 20, 1987. Anderson failed to appear on the morning of trial. That afternoon Anderson appeared and informed the court that he had not appeared earlier because Mr. Bland had advised him that he was retaining another attorney for his son. Mr. Bland then picked up the file. Anderson stated to the court that he was under the impression that someone else was to represent Bland

---

4. The district court stated that it assumed the truth of these declarations to the extent they were not inconsistent with the record.

5. A State appellate court's factual findings are also presumed correct unless they are not fairly supported in the record. *See Parker v. Dugger,* 498 U.S. 308, 320, 111 S.Ct. 731, 739, 112 L.Ed.2d 812 (1991).

until that morning when he was informed that Bland had not retained other counsel. Based upon his representation, the trial court continued the trial until August 10, 1987.

Anderson again failed to appear on August 10. When the court asked Bland whether he could explain Anderson's absence, Bland responded: "No. I believe he is under the impression he is no longer on the case." The court asked Bland how Anderson had gotten that impression because the court had not relieved him as counsel. Bland responded that he did not know. Accordingly, the court found Anderson to be in contempt of court and issued a bench warrant. Anderson appeared in court on August 14, 1987, and told the court that he had made a mistake in calendaring the trial date. The following exchange then took place:

THE COURT: Are you ready for trial?

ANDERSON: No, Your Honor. First of all, I am trailing on another matter for trial here on Tuesday.

THE COURT: What is your pleasure on this matter?

ANDERSON: *It is my understanding that [Bland] is wishing that another attorney represent him.*

*I guess I have a motion to be relieved as counsel, and he wants a public defender to represent him.*

THE COURT: *He may wish that, but that is not going to happen.*

The trial date was then set for September 12, 1987, but was continued twice to permit Anderson time to prepare for trial and four additional times on prosecution motions. Trial finally commenced on October 29, 1987. Sentencing was to occur on December 1, 1987, but Anderson failed to appear. After finding that Bland was indigent, the trial court appointed a public defender to represent him. The public defender declared a conflict and a panel attorney was substituted for the public defender. After several continuances, sentencing finally occurred on February 25, 1988.

Mr. Bland complained to the California State Bar about Anderson's conduct. The district court noted that Anderson was disbarred as a result of default in that he failed

to answer the charges against him. His failure to appear at Bland's sentencing was one of the several unanswered charges against him.

### 2. Merits

The State argues that the district court erred both in finding that Bland made a motion to substitute counsel and in concluding that the trial court denied Bland the right to discharge his attorney. We reject both contentions.

We review the trial court's refusal to substitute counsel for an abuse of discretion. *United States v. Walker,* 915 F.2d 480, 482 (9th Cir.1990). The denial of a motion to substitute counsel implicates the defendant's Sixth Amendment right to counsel, *see id.* at 485, and thus is properly considered in this habeas proceeding.

The record supports the district court's conclusion that Bland requested substitute counsel. First, the statements of Bland's attorney indicate that Bland wanted another attorney to represent him, a public defender, and that he was making a motion to be relieved of counsel. Second, the trial court's response suggests that it was aware of Bland's request because his request was summarily denied: "[Bland] may wish that, but that is not going to happen." To be sure, the request is not a model of specificity; but, given the circumstances of the case, it was a request which, at the very least, required further inquiry by the court.

Having concluded that Bland's motion was denied, we next determine whether the district court erred in ruling that the state trial court's denial was an abuse of discretion. When reviewing the denial of a motion to substitute counsel for abuse of discretion, we consider the following three factors: "(1) timeliness of the motion; (2) adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense." *Walker,* 915 F.2d at 482 (internal quotations omitted). These elements required under the Sixth Amendment

are consistent with California state law which protects the defendant's constitutional right to counsel of his choice. *See, e.g., People v. Ortiz,* 51 Cal.3d 975, 275 Cal.Rptr. 191, 196–97, 800 P.2d 547, 552–53 (1990); *People v. Marsden,* 2 Cal.3d 118, 84 Cal.Rptr. 156, 159–61, 465 P.2d 44, 47–49 (1970).

### (i) Timeliness

■ The State argues that even assuming a request for substitute counsel was made, it was untimely, and thus was properly denied. However, given the posture of this case when the request was made, the request was timely. It is within the trial court's discretion to deny a motion to substitute made on the eve of trial where substitution would require a continuance. *Walker,* 915 F.2d at 482. In this case, the motion was made on August 14, 1987, after the July 20 trial date had been continued. The motion also preceded the trial court's immediate grant of another continuance. In any event, the trial did not actually occur until October 29, 1987, after several additional continuances.

Furthermore, we do not face the situation we faced in *Hudson* in which the motion for substitute counsel came at the close of the prosecution's case and would have caused either significant delay or a mistrial. 686 F.2d at 831. The motion came before trial began and Anderson was not much more prepared than a substitute counsel would have been because, at the time the motion for substitute counsel was made, Anderson had not yet prepared for trial. After the motion was denied, Anderson stated that he had not had an opportunity to prepare because he had just received the file the week before. In addition, the trial court did not indicate that it was denying the motion based upon timeliness grounds. *See Walker,* 915 F.2d at 482 (timeliness not dispositive of substitution issue when court did not indicate whether timing or delay affected its decision to deny the motion). Consequently, the timeliness factor is not dispositive and weighs in favor of Bland.

Finally, the State apparently also argues that the finding by the Court of Appeal that the motion was untimely should be presumed correct, *see Parker v. Dugger,* 498 U.S. 308, 320, 111 S.Ct. 731, 739, 112 L.Ed.2d 812 (1991). However, because the timeliness finding is not fairly supported in the record, it is not presumed correct. *See id.*

### (ii) Inquiry

■ The State concedes that once a request for substitute counsel has occurred, inquiry is required. *See United States v. Robinson,* 913 F.2d 712, 716 (9th Cir.1990) (when defendant requests substitute counsel, court should make formal inquiry into the defendant's reasons for dissatisfaction with present counsel), *cert. denied,* 498 U.S. 1104, 111 S.Ct. 1006, 112 L.Ed.2d 1089 (1991). In *Walker,* we found the district court's limited inquiry into the defendant's complaints inadequate. 915 F.2d at 483 (inquired only as to counsel's legal competency when inquiry should have focused upon nature and extent of conflict between counsel and defendant).

Similarly, in *United States v. Torres–Rodriguez,* 930 F.2d 1375 (9th Cir.1991), we reversed a conviction because the district court abused its discretion in denying the defendant's motion to substitute without inquiring as to his reasons for such a motion. *Id.* at 1381; *cf. Hudson,* 686 F.2d at 831 (denial of motion to substitute was proper because: (1) the motion was made at close of prosecution's case and (2) trial court rejected the motion after inviting defendant to make a statement regarding his complaint with counsel and after listening to his reasons for desiring new counsel). "We have no way of knowing the nature of [the defendant's] complaint with his appointed counsel, because the trial judge foreclosed all explanations of any kind regarding the motion to substitute." *Torres–Rodriguez,* 930 F.2d at 1381.

Like *Walker* and *Torres–Rodriguez,* the trial court in this case summarily denied Bland's request without making the requisite inquiry as to why he sought substitute counsel. Unlike *Hudson,* where the court heard the defendant's complaints, 686 F.2d at 831, the trial court in the present case did not give Bland the opportunity to air his complaints.

### (iii) Conflict

Because there was no inquiry, we cannot determine the nature and extent of the conflict. There is no way of knowing whether the dispute rose to the level of an irreconcilable conflict resulting in a total lack of communication and depriving Bland of effective assistance of counsel. *See Brown v. Craven,* 424 F.2d 1166, 1170 (9th Cir.1970) (defendant denied effective assistance of counsel because he was embroiled in irreconcilable conflict with counsel). In *Brown,* the state court had summarily denied the defendant's several motions to substitute counsel, making no inquiry as to the reasons for his dissatisfaction with his attorney. *Id.* at 1169. In granting habeas relief, we made it clear that the problem was not in giving the indigent defendant his particular choice of counsel; rather, the problem was the court's failure to make an adequate inquiry to determine whether there was an irreconcilable conflict. *Id.* at 1170.

Similarly, the trial court in this case did not make the requisite inquiry. Our review is "hampered because the trial court made absolutely no inquiry into the defendant's request for substitution." *Torres–Rodriguez,* 930 F.2d at 1381. Bland's declaration indicates that although there may not have been total lack of communication between Bland and Anderson, there was certainly very little communication in that Anderson spent only 15–20 minutes with Bland prior to trial. Nor did Anderson prepare Bland to take the witness stand. Bland's declaration states that Anderson did not pursue several eyewitnesses who had identified Gascon as the shooter. The record also reveals a lack of diligence on Anderson's part which most certainly led to his subsequent disbarment.[6]

The State's argument that Bland should have made his dissatisfaction known to the court misses the point. The record indicates that Bland, through his attorney, did make the request. The trial court's obligation to

inquire was triggered at that point. Indeed, the trial court may have ultimately concluded that granting Bland's request for new counsel was not required because no irreconcilable conflict existed. But, absent inquiry on the record, there is no way to determine whether it would have been proper to grant Bland's request. Further, contrary to the State's assertion, the fact that Anderson made the request, and not Bland, does not change the result. Anderson made the request on behalf of Bland: "It is my understanding that *the defendant* [Bland] is wishing that another attorney represent him. . . . He wants a public defender to represent him." (emphasis added).

■ Finally, the State contends that Bland has failed to establish that he was indigent. Thus, the State argues, Bland was not entitled to the appointment of counsel as he requested. This argument lacks merit. Even if we assume Bland was not indigent, the Sixth Amendment nonetheless protects his qualified right to obtain retained counsel of his choice. *See United States v. Washington,* 797 F.2d 1461, 1465 (9th Cir.1986) (under Sixth Amendment, criminal defendants who can afford to obtain counsel have a qualified right to obtain counsel of their choice). Whether Bland was indigent fails to resolve the issue with which we are presented.[7] Bland never had the opportunity to establish his indigency, or lack thereof, because the trial court did not inquire as to his reasons for requesting substitute counsel. Indeed, the failure to inquire is precisely the error we have identified.

### D. *Applicability of Harmless Error Analysis*

■ Our conclusion that the state trial court erred in failing to inquire as to the nature of Bland's request for substitute counsel, does not end the inquiry. Rather, we must next determine (1) whether the *Brecht*

---

**6.** We note that although Bland need only show that some federal constitutional right was violated in order to warrant habeas relief, this result is consistent with California law. *See People v. Marsden,* 2 Cal.3d 118, 84 Cal.Rptr. 156, 159–61, 465 P.2d 44, 47–49 (1970).

**7.** We note that under California law, whether or not a defendant is indigent is irrelevant to the consideration of whether to permit discharge of retained counsel. "[A] court must *not* consider whether a defendant is indigent and will require appointment of counsel in ruling on his timely motion to discharge retained counsel." *Ortiz,* 800 P.2d at 555 (emphasis added).

harmless error standard applies, as the State argues, and if so, (2) whether the error was harmless. We hold that *Brecht's* harmless error analysis does not apply when a defendant has been denied the right to substitute counsel.

■ In *Brecht v. Abrahamson*, —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), the Supreme Court held that in reviewing habeas cases, an appellate court should determine whether the constitutional trial error "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at ——, 113 S.Ct. at 1722, 123 L.Ed.2d at 373 (internal quotations omitted). This harmless error analysis applies only to trial errors and not to structural defects. *Id.* ——, 113 S.Ct. at 1717, 123 L.Ed.2d at 367. Because the latter defects infect the entire trial process, they defy harmless error analysis. Consequently, structural defects require automatic reversal. *Id.* The Court noted that deprivation of counsel is a structural defect requiring automatic reversal. *Id.*

"It is settled law that under the Sixth Amendment criminal defendants who can afford to retain counsel have a qualified right to obtain counsel of their choice." *Washington*, 797 F.2d at 1465 (internal quotations omitted). "That right is not absolute, however, and must give way where its vindication would create a serious risk of undermining public confidence in the integrity of our legal system." *Id.* (internal quotations omitted).

Although Bland was not completely deprived of counsel, similar concerns are at issue when a defendant is denied the right to substitute counsel. At first blush, a prejudice requirement would seem to make sense. Whether or not a defendant has suffered prejudice would necessarily require a review of counsel's performance at trial, i.e., whether counsel's assistance was ineffective. Accordingly, relief would necessarily depend upon a defendant's ability to establish ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[8] Indeed, the State briefly engages in

such analysis by arguing that Anderson's performance was adequate and competent.

■ However, we have held that "where there has been a complete disregard of the defendant's right to choose his own counsel, prejudice will be assumed." *Releford v. United States*, 288 F.2d 298, 302 (9th Cir. 1961) (granted defendant new trial because he was denied his Sixth Amendment right to choose counsel). Denial of the qualified right to counsel of choice is reversible error regardless of whether prejudice is shown. *United States v. Ray*, 731 F.2d 1361, 1365–66 (9th Cir.1984) (no showing that defendant was denied counsel of his choice); *see also Ortiz*, 800 P.2d at 555 (reversal is automatic when defendant deprived of right to counsel of his choice). In the cases previously cited where we found that the trial courts erred in summarily denying the motions to substitute counsel without inquiring as to the reasons for those motions, the convictions were reversed. *See Torres–Rodriguez*, 930 F.2d at 1381; *Brown*, 424 F.2d at 1170 (habeas relief granted); *see also United States v. Williams*, 594 F.2d 1258, 1261 (9th Cir.1979). There was no explicit discussion of a prejudice requirement in these cases; however, the issue was resolved by noting that the defendant was deprived of effective assistance of counsel. *See Williams*, 594 F.2d at 1260–61; *Brown*, 424 F.2d at 1170.

In confronting a somewhat similar situation, the Sixth Circuit declined to require a showing of prejudice. *See Wilson v. Mintzes*, 761 F.2d 275 (6th Cir.1985). In *Wilson*, the Sixth Circuit granted a defendant's habeas petition after concluding both that the trial court erred in denying the defendant's request for substitute counsel and that no showing of prejudice was required. *Id.* at 286. It held that a prejudice requirement "has no applicability to counsel of choice cases since, unlike the right to counsel of choice, the right to effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial."

---

**8.** *Strickland* requires the defendant to establish both that counsel's representation fell below an objective standard of reasonableness, 466 U.S. at

687–88, 104 S.Ct. at 2064, and that counsel's performance was prejudicial to the defense. *Id.* at 691–92, 104 S.Ct. at 2066–67.

*Id.* at 285 (internal quotation omitted).[9] The court reasoned that in requiring the defendant to establish prejudice as a result of the trial court's erroneous denial of his motion for substitution would focus attention upon the result obtained rather than upon the defendant's right to exercise his choice and "would lock the accused into his first selection of counsel unless he can prove conduct rising to the level of constitutional ineffectiveness." *Id.* at 286.

In dicta, the Supreme Court has stated that to the extent that the right to counsel of one's choice is like the right to represent oneself, a defendant need not show prejudice to his defense in order to obtain reversal for a violation of that right because it "reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceeding." *Flanagan v. United States,* 465 U.S. 259, 267–68, 104 S.Ct. 1051, 1056, 79 L.Ed.2d 288 (1984). Accordingly, we conclude that the district court did not err in holding that Bland need not establish prejudice in order to obtain habeas relief for a violation of his Sixth Amendment right to counsel of his choice.

■■ Even were we to assume that prejudice is required, we find that Bland has established the requisite prejudice as a result of Anderson's representation. The most damaging aspect of Anderson's representation was the presentation of inconsistent theories. For example, during the prosecution's case-in-chief, Anderson presented a theory

that Bland had twice denied, i.e., that Gascon was the shooter. Bland had ·denied that Gascon was the shooter both in the taped telephone conversation between Gascon and Bland and during Bland's post-arrest statement. When Bland testified, he denied that he was present in the jeep (a fact he had previously admitted to the officers in his statement) and he also denied that Gascon was the shooter, the theory presented by Anderson during the case-in-chief.[10]

Inconsistencies between the theories presented by the defense and prosecution· are a given. However, when those inconsistencies also arise from the defense's own camp, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Accordingly, because counsel's unprofessional errors undermine confidence in the outcome, we conclude that Bland has established prejudice. *See id.*

### IV

### CONCLUSION

Because Bland was denied the. right to substitute counsel in violation of the Sixth Amendment, we affirm the district court's grant of his habeas petition.

AFFIRMED.

---

9. It should also be noted that in *Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), the Supreme Court reversed our decision and held that there is no Sixth Amendment right to a "meaningful relationship" between the accused and his counsel. *Id.* at 14, 103 S.Ct. at 1617–18. *Morris* is inapplicable to this case because the defendant in *Morris* sought several continuances in order to permit his attorney time to prepare for trial. When a trial court denies a continuance sought for purposes of preparation, an inquiry as to the prejudice suffered is appropriate. *See Wilson,* 761 F.2d at 285 n. 17.

10. As the district court stated:

the record strongly suggests that the reason the "Gascon" theory was pursued was that Anderson was so terribly unprepared before trial that he was unaware of the substance of one or all of the following: the taped phone

conversation between petitioner and [Gascon], the February 18, 1987 post-arrest conversation between petitioner and Det. Young, and the version of events petitioner intended to convey when he took the stand in his own defense.

. . . .

Finally, the stark inconsistencies between the theory of the case pursued by Anderson during the government's case-in-chief (that Gascon did it), the theory suggested by the taped conversation and petitioner's statements to Det. Young (that petitioner *was* present but Gascon *was not* the shooter), and the theory put forth by petitioner once he took the stand (that petitioner *was not* present and Gascon *was not* the shooter), confirm petitioner's sworn declaration that he and his attorney had little if any substantive discussion prior to trial about whether petitioner would take the stand and, if so, what he would say.