THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD WANKE, JR., Defendant-Appellant.

Second District    No. 2—97—0581

Opinion filed March 24, 1999.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

Timothy W. Johnson, State's Attorney, of Sycamore (Martin P. Moltz, Stephen E. Norris, and Heath H. Hooks, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

A jury found the defendant, Richard Wanke, Jr., guilty of two counts of burglary. Ill. Rev. Stat. 1989, ch. 38, par. 19—1(a) (now 720 ILCS 5/19—1(a) (West 1996)). The trial court sentenced the defendant to two terms of three years' imprisonment to run concurrently. The defendant appeals his convictions. We affirm the defendant's convictions and modify the defendant's sentence to reflect 25 days' credit toward his sentence.

The following facts are taken from the record. On the night of October 25-26, 1991, the defendant was arrested by a Rockford police officer and taken into custody in connection with two burglaries that had occurred in the City of Rockford, Winnebago County. Rockford police officer Dave Hopkins gave the defendant his *Miranda* warnings, and the defendant agreed to speak. On October 30, 1991, Hopkins and another Rockford police officer, Gary Lindmark, informed the defendant that a considerable amount of allegedly stolen property had been recovered from the defendant's aunt's house. After the Winnebago County assistant State's Attorney (ASA) agreed to charge the defendant with only one count of burglary, the defendant agreed to speak about items obtained in relation to the Winnebago County offenses. Later in the day, Hopkins obtained a written statement from the defendant.

On October 31, 1991, the defendant met with Detective James Rhoades of the De Kalb city police and Detectives Rudi Ziegler and Norm Berth of the De Kalb County sheriff's police. Rhoades, Ziegler, and Berth were investigating two burglaries that occurred in the City of De Kalb and one burglary that occurred in the county's jurisdiction. Rhoades read the defendant his *Miranda* rights, and the defendant stated that he understood. The defendant neither made complaints to the officers nor asked for counseling. After the De Kalb County ASA agreed to charge the defendant with, at most, two counts of burglary, relating only to the burglaries in the City of De Kalb, the defendant gave oral and written statements regarding all three De Kalb burglaries.

The defendant's testimony regarding these interviews contradicted the police officers' testimony. According to the defendant, when first

taken into custody he told Hopkins that he wanted to remain silent and did not want to speak without someone else present, he asked for the presence of a counselor or his mother, and he asked for help or counseling. On October 30, 1991, Hopkins forced the defendant into an interview room. After Hopkins gave the defendant *Miranda* warnings, the defendant said that he did not want to speak and asked to have someone present. Hopkins retorted that it would not happen. The defendant told the officers that his cell was overcrowded, he was not getting enough food because he was a vegetarian, he was not given access to a phone, and he had psychological problems. The defendant signed a typed statement in order to get better conditions in jail.

The defendant stated that he spoke with the De Kalb police officers on October 31, 1991, only after being told he would receive better treatment in the jail. According to defendant, he was not given *Miranda* warnings on that day. The defendant told the officers that he had spent the previous night in the infirmary out of exhaustion and needed counseling. The defendant agreed to speak to the officers only after Rhoades told him he would be charged with only one offense. The defendant believed this agreement referred to the Winnebago County offense. The defendant had only a fleeting awareness of the De Kalb crimes but agreed with Rhoades as he described them and wrote a confession at the officers' direction.

Subsequently, the De Kalb County State's Attorney charged the defendant with two counts of burglary (Ill. Rev. Stat. 1989, ch. 38, par. 19—1(a) (now 720 ILCS 5/19—1(a) (West 1996))), alleging that the defendant committed two burglaries at the De Kalb Ace Hardware store. A public defender was appointed, and the defendant was released on bond on March 14, 1992. Upon arraignment, the De Kalb County State's Attorney filed an information to supplant the complaint.

Defense counsel filed a motion to suppress the statements the defendant made on October 31, 1991, to De Kalb County police officers and also moved to continue the proceedings pending a similar motion in Winnebago County where the defendant had also been arrested. On May 11, 1994, the De Kalb County trial court decided not to wait for the outcome of the Winnebago County proceedings and set a trial date. On October 27, 1994, the suppression hearing began. The trial court heard the testimony of one witness from the State and continued the case to January 20, 1995.

Before the suppression hearing resumed, De Kalb County Public Defender Ricky Holman was assigned to the defendant's case. On February 1, 1995, after hearing testimony from the defendant, Ziegler, Hopkins, Lindmark, Berth, and Eddie Houi of the Winnebago County jail, the trial court denied the defendant's motion to suppress, finding

that the statements in question were made voluntarily after the defendant had knowingly and voluntarily waived his *Miranda* rights. The trial court found that the defendant's testimony was not credible and not corroborated. A trial date was set for April.

The defendant subsequently filed three *pro se* motions—a motion for a new suppression hearing, a motion for reconsideration of the ruling on the motion to suppress, and a motion for the appointment of conflict counsel. The last motion alleged, in part, that defense counsel was not adequately prepared for the suppression hearing. After the defendant knowingly waived counsel, the trial court dismissed defense counsel (Holman) and denied the defendant's motion for conflict of counsel but, upon the defendant's request for standby counsel, appointed Holman in that capacity. The trial court then vacated the order denying the motion to suppress and reopened proofs for the suppression hearing.

The defendant, proceeding *pro se*, called the following witnesses to testify regarding the conditions at the Winnebago County jail and the defendant's poor state of mind at the time the defendant made the October 31, 1991, statements: Houi, who testified regarding conditions at the Winnebago County jail; Patricia Davidson, an investigator for the Winnebago County public defender, who stated that on November 1, 1991, the defendant asked to see an attorney; Pastor Bradford Wilson, who testified regarding the defendant's poor state of mind and poor treatment in the Winnebago County jail; William Evans, a family therapist, who stated that the defendant suffered from dissociative disorder and blackouts; and Doctors Frank Cushing and Robert Gordon, who also testified regarding the defendant's mental condition. The defendant also called Wilson, Hopkins, Rhoades, Northern Illinois University Detective Curt Underwood, James Meron of the Winnebago County sheriff's department, and Terry Kurt, an attorney who represented the defendant in a civil case against Detective Rhoades. The defendant intended to call other witnesses, but they were not available. The trial court stated that the defendant could reopen proofs at a later time if he obtained affidavits from the missing witnesses. After hearing arguments on the motion to suppress, the trial court once again denied it.

Although the defendant requested the appointment of counsel other than Holman, the trial court reappointed him to represent the defendant. The trial began on December 11, 1995. The trial court granted the defendant's motion to exclude the Winnebago County crimes.

James Wayman, president of the De Kalb Ace Hardware store, testified that the store was burglarized in June and September of

1991. In June, someone had entered the store through an air vent and exited through the back door. The items taken included hand and power tools, tool boxes, garden tools, picnic coolers, a photocopier, storage bins, and rolls of duct tape. In September, similar items were missing. Wayman identified some of the items after they had been recovered by the police.

Lindmark and Hopkins testified that they recovered the Ace Hardware items from a home the defendant identified as his home, which he was remodeling, on Mill Road.

Rhoades and Ziegler testified regarding the defendant's October 31, 1991, statements. According to the officers, the defendant stated that he entered the store through an air vent in June and September 1990 and took numerous items.

Dr. Gordon testified that, in his opinion based on two interviews and various test results, the defendant had no significant psychopathology or mental illness, was able to conform his conduct to the law, and was able to appreciate its criminality on the dates of the alleged burglaries.

Dr. Cushing testified that, in his opinion based on interviews and test results, the defendant suffered from an amnesia-like impairment as to some issue in his life; had auditory hallucinations and signs of paranoid thinking, depersonalization, and derealization; blurred fantasy and reality; and suffered from low-level depression. Dr. Cushing opined that the defendant suffered from dissociative disorder, demonstrated an inability to recall, had a tendency to black out and be unable to account for periods of time and a tendency to lose track of where or who he was. Cushing stated the defendant was unable to conform his conduct to the law and appreciate the criminality of his conduct.

The defendant testified he had been sexually assaulted and had been in several car accidents as a teen and had had several friends who committed suicide. He was unable to sleep or work and suffered from a mitral valve problem and headaches. In 1991 he was trying to renovate buildings and shared an apartment with friends. He had trouble recalling events in the summer of 1991 and could not account for some time periods. The Mill Road building belonged to his grandmother, and he checked on it from time to time.

The defendant stated that, although he signed a consent-to-search form on October 30, 1991, and took the police to the Mill Road building, he thought the consent was for a search of his car, not the Mill Road address. The defendant stated that he did not recall making any statements to the police on October 31, 1991.

Charles Worboys testified that he saw the defendant at the Winne-

bago County jail and the defendant appeared very nervous, had sluggish speech, was not expressive, and had lost weight. However, Worboys mistakenly indicated that the defendant was at the jail on the wrong dates.

Pastor Wilson testified that the defendant was confused, exhausted, and upset about jail conditions on October 29, 1991. Ronald Mauro, the defendant's cellmate in October 1991, stated that the defendant did not talk much, seemed frustrated, did not eat, was denied access to a phone, and was forced to see detectives.

The jury was instructed on the verdicts of guilty, not guilty, not guilty by reason of insanity, and guilty but mentally ill. The jury found the defendant guilty of both counts of burglary.

The defendant filed a motion for the appointment of new counsel, alleging that Holman failed to provide effective representation. The trial court granted the defendant's motion and appointed Robert Carlson to investigate the claims and argue the motion. After an evidentiary hearing and arguments, the trial court found that the defendant had received adequate, though not perfect, representation. The trial court denied the defendant's motion for a new trial based on ineffective assistance of counsel. The trial court then denied the defendant's amended motion for a new trial and sentenced the defendant to concurrent sentences of three years' imprisonment upon the two counts of burglary. The defendant filed this timely appeal.

The defendant first argues that the trial court erred by admitting statements the defendant made to De Kalb police officers regarding the Ace Hardware burglaries. The defendant argues that the statements were made as part of a plea negotiation under Supreme Court Rule 402(f) (134 Ill. 2d R. 402(f)) and, thus, were inadmissible. Therefore, the defendant urges this court to reverse the defendant's convictions and remand the cause for a new trial. The State argues that the statements were not part of a plea negotiation and, thus, were properly admitted. We agree with the State.

We note that the defendant failed to raise this issue in the trial court. However, because of the highly prejudicial character of the alleged error, we will consider the issue. See *People v. Benniefield*, 88 Ill. App. 3d 150, 155 (1980); *People v. Morris*, 79 Ill. App. 3d 318, 331 (1979).

For purposes of the Rule 402(f) issue, the defendant accepts the following facts as true. On the night of October 25-26, 1991, the defendant was arrested by the Rockford police officers and placed in the Rockford city jail. On October 30, 1991, Rockford police officers Hopkins and Lindmark questioned the defendant about certain alleged burglaries in Winnebago County, Illinois. The officers advised the de-

fendant that they had found a number of stolen items at the defendant's great-great aunt's house on Kilburn Avenue and talked about the charges that could be brought. The defendant stated that he "wanted some kind of deal." Hopkins replied that "through the State's Attorney I could offer him that no matter how many burglaries he had committed in Winnebago County he would be only charged with either one commercial or residential burglary." The defendant wanted reassurance, and Hopkins contacted a Winnebago County ASA who confirmed that the defendant would be charged with only one offense in Winnebago County. There was no agreement regarding burglaries outside of Winnebago County. The defendant agreed to give a statement regarding the Winnebago County offenses.

On October 31, 1991, the defendant met with Detective Rhoades of the De Kalb city police and Detectives Ziegler and Berth of the De Kalb County sheriff's police. Rhoades told the defendant that he was investigating two burglaries at the De Kalb Ace Hardware store in the *City* of De Kalb. Berth and Ziegler told the defendant that they were investigating the burglary of a house under construction on Route 64 in the *County* of De Kalb. Rhoades read the defendant his *Miranda* rights, and the defendant stated that he understood. Rhoades asked the defendant whether he would speak with them. The defendant said that he would but first wanted the number of charges that would be filed against him made as clear as possible. The defendant told them that the Winnebago County State's Attorney agreed to charge him with only one offense regardless of the number of burglaries he had committed, and the defendant wanted the same deal with the De Kalb officers.

Rhoades then called Duke Harris, the De Kalb County ASA. Harris told Rhoades that the defendant would possibly be charged with two counts of burglary. Rhoades then reported to the defendant what Harris said, that the defendant would definitely be charged with one burglary in the City of De Kalb and possibly two. Officers Berth and Ziegler discussed with the defendant the alleged burglary that occurred in their jurisdiction (De Kalb County) and decided that the defendant would not be charged with that offense. The defendant said that he would like to get down to only one charge but agreed to talk to the officers and proceeded to give oral and written statements regarding the two Ace Hardware burglaries that occurred in the City of De Kalb and the house burglary that occurred in the county's jurisdiction.

Subsequently, the State charged the defendant with two counts of burglary of the De Kalb Ace Hardware store. The defendant did not plead guilty to either offense. Instead, the defendant pleaded not guilty by reason of insanity.

■■ Supreme Court Rule 402(f) provides:
"If a plea discussion does not result in a plea of guilty, *** neither the plea discussion nor any resulting agreement, plea, or judgment shall be admissible against the defendant in any criminal proceeding." 134 Ill. 2d R. 402(f).

The purpose of the rule is to encourage the negotiated disposition of criminal cases through the elimination of the risk that the accused will enter plea discussions at his peril. *People v. Friedman*, 79 Ill. 2d 341, 351 (1980). Where, as in this case, the facts regarding whether statements are plea related are uncontested, a reviewing court may review the issue *de novo*. *People v. Taylor*, 289 Ill. App. 3d 399, 402 (1997). The determination whether a statement is plea related is to be made on a case-by-case basis. *Friedman*, 79 Ill. 2d at 351-52. In making the determination, a court must consider (1) whether the accused exhibited a subjective expectation to negotiate a plea; and (2) whether his expectation was reasonable under the totality of the objective circumstances present. *Friedman*, 79 Ill. 2d at 351. When the accused's subjective expectations are not explicit, the surrounding objective circumstances are critical to the question of whether a statement is plea related. *Friedman*, 79 Ill. 2d at 353. A statement will not fall under Supreme Court Rule 402(f) unless the discussion contains the rudiments of a negotiation process *in which the defendant will plead guilty in return for concessions by the State*. *Friedman*, 79 Ill. 2d at 353. Therefore, where there is nothing that can reasonably be interpreted as an offer by the defendant to *plead guilty*, Supreme Court Rule 402(f) does not apply. See *People v. Rolih*, 233 Ill. App. 3d 484 (1992).

■ For example, in *Rolih*, 233 Ill. App. 3d at 488-89, the appellate court held that Supreme Court Rule 402(f) did not apply where, during a conversation with police, the defendant allegedly stated only that he "wished to cooperate in any way possible for future consideration of the charges that would be pending against him" and that "he would do anything to assist [the police] which would in turn assist [the defendant] with—in consideration of the charges" (*Rolih*, 233 Ill. App. 3d at 488). *Rolih*, 233 Ill. App. 3d at 489. Like *Rolih*, nothing in the instant case indicates that the defendant had either a subjective or reasonable objective expectation to negotiate a *plea of guilty*. The defendant never indicated a willingness to plead guilty in exchange for some concession by the State. The defendant did not indicate under what terms he would be willing to bargain for a guilty plea. Instead, the defendant's statements indicate that he negotiated *only for a reduction in the number of charges filed in exchange for his statement*. Further, no police officer or representative of the State's Attorney's office made any statement regarding the defendant's plea. Thus, like

*Rolih*, the rudiments of a negotiated plea were lacking in this case. See *Rolih*, 233 Ill. App. 3d at 488-89. Accordingly, the trial court did not err in admitting the defendant's statements at issue.

The cases cited by the defendant to support his argument are distinguishable. The defendants in *Friedman*, 79 Ill. 2d 341, *People v. Cowherd*, 114 Ill. App. 3d 894 (1983), and *People v. Morris*, 79 Ill. App. 3d 318 (1979), manifested a subjective and reasonable objective expectation to negotiate a plea of guilty. In *Friedman*, during a conversation with an investigator for the attorney general, the defendant offered to make a deal and stated that he would prefer to go to a federal prison rather than a state prison. *Friedman*, 79 Ill. 2d at 350. The supreme court concluded that the defendant's statements were inadmissible under Rule 402(f). *Friedman*, 79 Ill. 2d at 352. The *Friedman* court explained, "Before a discussion can be characterized as plea related, it must contain the rudiments of the negotiation process, *i.e.*, a willingness by defendant to enter a plea of guilty in return for concessions by the State." *Friedman*, 79 Ill. 2d at 353. *Friedman* is factually distinguishable from the case at bar because the only thing the defendant in *Friedman* had to offer the State was a guilty plea. Conversely, the defendant in the case at bar had something else to offer the State, namely, information regarding other cases. Further, unlike *Friedman*, the defendant in this case explicitly limited the negotiation to the number of charges that would be brought. Thus, there is nothing in this case that reasonably could be interpreted as a willingness on the defendant's part to plead guilty to any offense. Therefore, *Friedman* is factually inapposite and not controlling.

The defendants in *Cowherd* and *Morris* also made statements that reasonably could have been interpreted to include an offer to negotiate a plea of guilty. *Cowherd*, 114 Ill. App. 3d at 897 (in a conversation with a police detective, the defendant requested to speak with an FBI agent and asked about the possibility of serving his Illinois time along with federal time, and the record revealed unspecified negotiations between the defendant and the State's Attorney); *Morris*, 79 Ill. App. 3d at 331 (the defendant cooperated with a parole officer and discussed his involvement in an armed robbery as a specified part of plea negotiations with the State). In contrast, there is nothing in the case at bar that reasonably could be interpreted to include an offer to negotiate a plea of guilty. Thus, *Cowherd* and *Morris* are not controlling here.

Next, the defendant claims his constitutional right to counsel was violated by the trial court's failure to inquire into his pretrial complaints against defense counsel; grant the defendant's motion to substitute counsel; and appoint different counsel before trial. The State argues that the trial court did not abuse its discretion. We agree with the State.

We first turn to the defendant's pretrial complaints against defense counsel and his request for the appointment of different counsel. The defendant argues that the trial court erred by denying his February 22, 1995, motion to substitute counsel. The motion was filed after the suppression hearing and before the trial began. In that motion, the defendant alleged in relevant part that defense counsel (1) failed to meet with the defendant in order to familiarize himself with the case; (2) refused to call relevant witnesses and submit certain materials, documents, and evidence; (3) "refused to respect the Defendants [*sic*] wishes"; (4) was "verbally abusive, combatant [*sic*] and unsupportive [*sic*] of the rights of the defendant"; and (5) said after the suppression hearing, "There is no need for a trial. Your [*sic*] done. But if you want a trial I can get up there with a straight face and defend you. I've done it before." After the defendant proceeded *pro se* during a second suppression hearing, the defendant requested trial counsel. The trial court reappointed Holman, the same attorney who represented the defendant during the first suppression hearing.

■ A criminal defendant has no right to choose his appointed counsel or insist on representation by a particular public defender. *People v. DeRossett*, 262 Ill. App. 3d 541, 543-44 (1994). The decision to grant or deny a motion for substitution of counsel will not be disturbed absent an abuse of discretion. See *People v. Howery*, 178 Ill. 2d 1, 49 (1997). Dissatisfaction with one's counsel, a deteriorated relationship, or the fact that defense counsel and defendant argue or disagree about trial tactics, alone, will not constitute good cause for substitution. *People v. Royark*, 215 Ill. App. 3d 255, 266-67 (1991).

■ In the case at bar, the defendant essentially alleged that he and defense counsel disagreed over strategy. These allegations do not constitute good cause. See *Royark*, 215 Ill. App. 3d at 266-67. The record also indicates that, despite the defendant's allegations, defense counsel filed necessary motions, called witnesses, and otherwise vigorously represented the defendant at the suppression hearing. Further, defense counsel later assisted the *pro se* defendant during the second suppression hearing. The record indicates that the trial judge who ruled on the motion to suppress was the same judge who ruled on the motion to substitute counsel and, thus, was familiar with defense counsel's conduct and representation. Thus, we cannot say that the trial court abused its discretion by failing to appoint another defense attorney.

The defendant asserts that a trial court is required to conduct an evidentiary hearing whenever a defendant files a motion for substitute counsel alleging ineffective assistance. This argument was rejected by our supreme court in *People v. Byron*, 164 Ill. 2d 279, 305 (1995). In *Byron*, during a postsentence hearing the defendant alleged that he

was not given effective assistance of counsel during a death penalty hearing. The defendant provided the bases for his complaint, and the trial court was familiar with the proceedings at issue. See *Byron*, 164 Ill. 2d at 304. However, the trial court did not conduct a preliminary investigation to determine the merit of the defendant's allegations. *Byron*, 164 Ill. 2d at 304-05. Rather, the court stated that an evidentiary hearing was not required where, as in the instant case, the trial court properly concluded that the defendant's claim was without merit. *Byron*, 164 Ill. 2d at 305.

The defendant's citation to *Bland v. California Department of Corrections*, 20 F.3d 1469, 1475-76 (9th Cir. 1994), is misplaced. In *Bland*, defense counsel made an unspecified statement regarding the defendant's preference to be represented by another attorney. There is nothing in *Bland* that indicates that the trial court was familiar with the specific bases for the statement. Unlike the situation in *Bland*, the defendant in the instant case provided a motion specifying his complaints and the bases for them and the trial court was familiar with defense counsel's conduct during the entire proceedings. Thus, *Bland* is factually distinguishable from the case at bar.

The defendant also asserts that, by citing *Bland*, our supreme court in *Howery*, 178 Ill. 2d at 49, acknowledged the need for an inquiry each time a defendant requests substitute counsel. This argument lacks merit. The *Howery* court cited *Bland* merely to distinguish it, and nothing in *Howery* indicates that a trial court is required to make an inquiry every time a defendant expresses his dissatisfaction with defense counsel.

Further, even if the trial court abused its discretion by refusing to appoint new counsel, the alleged error does not warrant reversal. The denial of a motion for the substitution of counsel will be upheld despite an abuse of discretion unless the defendant establishes that he was denied the effective assistance of counsel. *United States v. Zillges*, 978 F.2d 369, 372 (7th Cir. 1992). Thus, the defendant must establish that (1) counsel's performance was substandard; and (2) but for "counsel's deficiencies, 'the result of the proceeding would have been different.' " *Zillges*, 978 F.2d at 372-73, quoting *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). In other words, the defendant must establish that counsel's substandard behavior prejudiced the defendant. *Zillges*, 978 F.2d at 372-73, citing *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

The defendant in the case at bar has failed to establish that Holman's allegedly deficient conduct affected the outcome of the trial. After the first suppression hearing, the trial court vacated its order

denying the motion to suppress and allowed the defendant to reopen proofs and proceed *pro se* on the renewed motion. The defendant was then permitted to present any witnesses or evidence he claimed his counsel should have presented originally. In fact, the defendant presented the testimony of numerous witnesses. Yet, after holding this second hearing, the trial court again denied the defendant's motion to suppress. Thus, the defendant has failed to establish that defense counsel's alleged deficiencies regarding the presentation of testimony and evidence at the first suppression hearing prejudiced the defendant. The defendant also has failed to establish how the other alleged deficiencies listed in the motion to substitute counsel resulted in prejudice to the defendant. Accordingly, the trial court's denial of the defendant's motion to substitute counsel does not warrant reversal.

The defendant argues the improper denial of substitute counsel is the sort of error that cannot be harmless. We acknowledge that the United States Court of Appeals for the Ninth Circuit holds this view (*Bland*, 20 F.3d at 1475-76); however, the Illinois Supreme Court does not (see *People v. Nitz*, 143 Ill. 2d 82, 134-35 (1991)). Because our supreme court has not overturned the holding in *Nitz* and "we are not bound by a Federal court decision other than a decision of the United States Supreme Court" (*Cavarretta v. Department of Children & Family Services*, 277 Ill. App. 3d 16, 23 (1996)), the defendant's argument fails.

The defendant's argument that defense counsel's inadequate representation during the suppression hearing created an "additional hurdle for the defendant to overcome" during the second suppression hearing is without merit. The record indicates that the trial court vacated its original order denying the motion to suppress and then reopened the proofs. Thus, the defendant's argument fails.

The defendant argues that the trial court's failure to appoint new counsel prejudiced the defendant because defense counsel provided ineffective assistance of counsel during the trial. More specifically, the defendant argues that defense counsel failed to adequately prepare certain witnesses and this resulted in their confusion while testifying and failed to discuss his strategy regarding these witnesses with the defendant. The defendant also claims that defense counsel's lack of preparation caused the trial court to bar three witnesses.

The record indicates that the trial court conducted a full hearing on the defendant's claims of ineffective assistance of counsel at the posttrial stage and appointed new counsel to present those claims. The trial court determined that the defendant received adequate representation. Further, the defendant has failed to establish that the trial court's decision was erroneous or that any of the alleged deficiencies

would have resulted in a different outcome. Thus, the defendant has failed to establish that the trial court's failure to appoint different counsel prior to trial prejudiced the defendant.

•6 Next, the defendant argues that he was denied due process of law when the trial court instructed the jury on the alternative verdict of guilty but mentally ill (GBMI), which was subsequently found unconstitutional by this court. *People v. Robles*, 288 Ill. App. 3d 935 (1997). The State argues that a new trial is not warranted because the defendant was not prejudiced by the instruction. We agree with the State.

"A party may question the constitutional validity of a statutory provision only if he or she has sustained or is in immediate danger of sustaining some direct injury as a result of enforcement of the statute." *People v. Esposito*, 121 Ill. 2d 491, 512 (1988). Further, a constitutional error in jury instructions warrants reversal only if "there is a reasonable possibility that the error contributed to the defendant's conviction" (*People v. McCleary*, 208 Ill. App. 3d 466, 475 (1990)).

In the case at bar, there is no showing that the GBMI instruction contributed to the defendant's conviction or that the instruction otherwise prejudiced the defendant. The defendant was found guilty on both counts of burglary. Thus, the GBMI instruction given pursuant to section 115—4(j) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—4(j) (West 1992)) does not warrant reversal in this case.

*Robles* (288 Ill. App. 3d 935), cited by the defendant, is factually distinguishable from the case at bar. In *Robles* the GBMI statute directly injured the defendant. In *Robles*, the defendant argued before the jury that he was not guilty by reason of insanity. The State then proffered the GBMI instruction. Thus, the jury was instructed on the verdicts "guilty," "not guilty," "not guilty by reason of insanity," and "GBMI." *Robles*, 288 Ill. App. 3d at 944. During deliberations, the jury sent out questions to the trial court about the definition of mental illness and whether the definition had been mistyped in the instructions. *Robles*, 288 Ill. App. 3d at 945. The jury returned verdicts of GBMI, rather than guilty, on all counts. On appeal, this court held that the GBMI statute had denied the defendant due process because it encouraged a compromise verdict. *Robles*, 288 Ill. App. 3d at 951-52.

Unlike *Robles*, the defendant in the instant case was not directly injured by the GBMI statute. The jury obviously did not reach a compromise verdict, since it found the defendant guilty on both counts. Further, the defendant, rather than the State, proffered the instruction, and there was no evidence of jury confusion. Thus, *Robles* is not controlling in this case.

■ Lastly, the defendant argues and the State concedes that the trial court erred by failing to give him credit for 25 days towards his sentence for the time he spent in custody before posting bond. Because the record indicates that the defendant was in custody for all or part of 25 days from February 19, 1992, through March 14, 1992, on the present charges before posting bond, the trial court erred by failing to grant him 25 days' credit towards his sentence. See 730 ILCS 5/5—8—7(b) (West 1996). Accordingly, this court amends the sentencing order to reflect a credit of 25 days. See *People v. Sistrunk*, 259 Ill. App. 3d 40, 52 (1994).

Additionally, the defendant argues that he is also entitled to another eight days' credit for the time he spent in the custody of Winnebago County. The defendant argues that he was in the custody of Winnebago County between October 1991 and February 1992 and in the latter part of 1992. The defendant claims that, if a hold or detainer was placed on the defendant by De Kalb County authorities while the defendant was in custody in Winnebago County, he is entitled to credit for that time. However, there is nothing in the record that indicates that, while the defendant was in the custody of Winnebago County, De Kalb County authorities placed a hold or detainer on the defendant. Because we must resolve against the defendant any doubts that arise from the absence of an adequate record, the defendant's argument regarding this issue fails. See *People v. Assenato*, 257 Ill. App. 3d 1026, 1030 (1994).

For all the foregoing reasons, we affirm the defendant's convictions and modify the defendant's sentence to reflect 25 days' credit.

The judgment of the circuit court of De Kalb County is affirmed as modified.

Affirmed as modified.

COLWELL and THOMAS, JJ., concur.