Filed 4/11/2018

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>v.<br><br>GABRIEL ELENA LOPEZ,<br><br>       Defendant and Appellant. | A148539<br><br>(Napa County<br>Super. Ct. No. CR169387) |

After being accused of numerous sexual offenses against his girlfriend's children, defendant Gabriel Lopez pleaded no contest to two counts of lewd acts upon a child under 14 years old and one count of rape, and he admitted a special allegation that he had committed offenses against more than one victim. The trial court sentenced him to 35 years to life in prison.

On appeal, Lopez contends the trial court erred by denying his request to discharge his retained counsel and incompletely advising him about various consequences of his plea. We conclude Lopez was denied his right to counsel of choice under *People v. Ortiz* (1990) 51 Cal.3d 975 (*Ortiz*), which automatically requires reversal, and therefore do not address his remaining claims.[1]

---

[1] In light of this holding, we also need not address the claims Lopez raises in his petition for a writ of habeas corpus. By separate order filed today, we dismiss the petition as moot. (*In re Gabriel Elena Lopez*, A153975.)

# I.
## FACTUAL AND PROCEDURAL
## BACKGROUND

Lopez began dating a woman in approximately 2010.[2] The woman, whom we will refer to as mother, had two daughters from a previous relationship. In January 2014, the elder daughter, who was then 16 years old, reported that while mother was at work, Lopez came into her bedroom and molested her. She stated he had sucked on her breasts, performed oral sex on her, made her touch his penis, digitally penetrated her, and raped her. The younger daughter, who was then 10 years old, also reported sexual abuse. She stated Lopez had previously squeezed her buttocks, tried to kiss her, and offered her money to let him " 'do whatever [he] want[ed] with her.' " She claimed that he had also kissed her several other times.

Mother reported the daughters' allegations to the Napa Police Department. After the police interviewed the daughters, mother made a pretext call to Lopez during which he denied having intercourse with the older daughter but admitted to groping her, having oral sex with her, and masturbating afterward. When Lopez arrived in a public location to talk to mother, he was arrested.

Later that month, the Napa County District Attorney filed a complaint charging Lopez with nine felony counts. For his acts against the older daughter, he was charged with one count of forcible rape, one count of sexual penetration by a foreign object, and one count of forcible oral copulation against a minor over 14 years old.[3] For his acts against the younger daughter, he was charged with two counts of forcible lewd acts upon a child under 14 years old, three counts of lewd acts upon a child under 14 years old, and

---

[2] The facts in this paragraph are drawn from the probation report.

[3] These charges were brought under Penal Code sections 261, subdivision (a)(2) (rape), 289, subdivision (a)(1)(A) (penetration with foreign object), and 288a, subdivision (c)(2)(C) (oral copulation). All further statutory references are to the Penal Code unless otherwise noted.

one count of contact with a minor with the intent to commit a sexual offense.[4]  The complaint also included two special allegations that Lopez had committed offenses against more than one victim.[5]

Although Lopez was appointed a public defender at his arraignment, he soon retained private counsel, Jeffrey Hammond.  Hammond first appeared in February 2014, the month after the complaint was filed, and the trial court relieved the public defender of representation.  After Lopez waived his right to a preliminary hearing, the court held him to answer on all the charges and allegations.  In August, he entered pleas of not guilty and denied the special allegations.  The court set the trial for early December.

Over the next year, the trial was continued three times, twice at the request of the defense and once at the request of the prosecution.  None of these requests were opposed.  At the hearings held throughout this period, the parties consistently indicated they were attempting to resolve the case.  According to Hammond, he was having difficulty meeting with Lopez because Lopez spoke Spanish, requiring an interpreter, and Lopez had been transferred back and forth between Napa County and Solano County jails.

The trial was eventually set for mid-January 2016.  At a January 6 readiness conference, the prosecutor stated that the People had offered Lopez a deal under which he would receive a determinate term of 10 years and a consecutive indeterminate term of 25 years to life in prison.  The prosecutor represented that, if Lopez was convicted of all the charged counts and allegations, he would face a minimum sentence of 75 years to life.

Hammond then told the trial court that Lopez wished to waive his right to a jury trial and have a court trial instead.  In response to the court's questioning, Lopez said he "need[ed] to think about it."  At a hearing the following day, Hammond indicated that Lopez still had not "given . . . a definitive answer whether or not [he was] willing" to enter the waiver.

---

[4] These charges were brought under section 288, subdivisions (a) (lewd acts) and (b)(1) (forcible lewd acts), and section 288.3, subdivision (a) (contact with minor).

[5] These allegations were made under section 667.61, subdivisions (j)(2) (victim under 14 years old) and (m) (victim 14 years of age or older).

The next day, January 8, the parties reconvened for another readiness conference. After the trial court asked for the status, Hammond stated, "Your Honor, my client has requested that he be allowed to either retain new counsel, or in the alternative have counsel appointed to represent him." The following discussion ensued:

THE COURT: And you've been retained in this matter to represent through trial?

MR. HAMMOND: I have not be[en] retained for trial.

THE COURT: But you're the attorney of record.

MR. HAMMOND: I am the attorney of record, yes.

THE COURT: I'm really not inclined to grant that request. The matter is almost two years old. It will be two years old on January 29th. And you've been in the case since when, June?

MR. HAMMOND: I got retained pretty much from the get go.

THE COURT: From the beginning.

MR. HAMMOND: Yes.

THE COURT: Okay. And you're prepared to go to trial next week?

MR. HAMMOND: I am.

The trial court then addressed Lopez, stating, "Mr. Lopez, this is simply not the time when – when you ask for a new lawyer. We're set. This case has been pending for some time. There's been an offer that's been made I understand from the District Attorney." The court explained to Lopez that he "basically . . . [had] a couple of choices here," either to accept the prosecution's offer or have a jury or court trial. Lopez stated that he understood, but when the court asked whether he wanted to accept the offer or go to trial, he said, "Right now I cannot give you a complete response yes or [no]." The court responded, "Here's the problem. Okay. Today is the day to make that decision. It's the last day to make that decision. Either later today or Monday morning you'll start

4

your trial.  And once that starts, any offer from the District Attorney is gone, unless there is some unusual circumstance that comes up."

The trial court then denied the "request to dismiss Mr. Hammond" and passed the matter to allow Lopez to consult with Hammond about the prosecution's offer.  When they were back on the record, Hammond said, "Well, I thought we had an agreement, and things seem to have gone south. [¶] . . . [¶] So I think my client is . . . concerned about the way that the statutes read.  And perhaps he doesn't understand some of the language in the statutes as they're pled in the Complaint."  The court confirmed the details of the offer with the prosecutor and explained to Lopez the three charges and the multiple-victim allegation to which he would be pleading.

The trial court also explained that if Lopez accepted the prosecution's offer, he would receive a sentence of 35 years to life, and he had to "weigh . . . the practical question of the likelihood that [he] might be found not guilty versus the likelihood that if [he] went to trial [he] would be found guilty and sentenced to 75 years to life."  The court concluded by asking, "So is it your desire to plead no contest and accept the offer, or would you prefer to proceed to trial?  Those are your options."  Lopez responded, "No contest."

Lopez then pleaded no contest to two of the charges of non-forcible lewd acts upon a child under 14 years old and the charge of forcible rape.  In connection with the rape charge, he also admitted the special allegation that a victim was 14 years of age or older and he committed offenses against more than one victim.  On the prosecution's motion, the trial court dismissed the remaining counts and allegations.  Lopez was sentenced to a total term of 35 years to life in prison, composed of a term of eight years for one of the lewd-acts counts, a consecutive term of two years for the other one, and a consecutive term of 25 years to life for the rape and accompanying special allegation.

In May 2016, Lopez appealed and requested a certificate of probable cause in propria persona.  In January 2017, while his request was still pending, he filed a petition for writ of mandate in this court (*Lopez v. Superior Court of Napa County*, A150352).

5

This court issued an order indicating the trial court had jurisdiction to rule on the request. The trial court then granted the request, and this court dismissed the writ petition as moot.

## II.
### DISCUSSION

*A.     General Legal Standards.*

Few restrictions apply when a defendant wants to discharge his or her retained counsel. The right to retained counsel of choice is generally "guaranteed under the Sixth Amendment to the federal Constitution. [Citations.] In California, this right 'reflects not only a defendant's choice of a particular attorney, but also his [or her] decision to discharge an attorney whom he [or she] hired but no longer wishes to retain.' " (*People v. Verdugo* (2010) 50 Cal.4th 263, 310-311 (*Verdugo*), quoting *Ortiz, supra*, 51 Cal.3d at p. 983; see also Cal. Const., art. I, § 15; Code Civ. Proc., § 284.) A defendant is entitled to discharge retained counsel "with or without cause" because "[t]he right to discharge retained counsel is based on ' "necessity in view of both the delicate and confidential nature of the relation between [attorney and client], and of the evil engendered by friction or distrust." ' " (*Ortiz*, at p. 983.) Thus, defendants seeking to discharge retained counsel "need not meet the more stringent requirements for discharging appointed counsel set forth in *People v. Marsden* (1970) 2 Cal.3d 118 [(*Marsden*)] and its progeny" by demonstrating either that appointed counsel is providing "inadequate representation" or that there is an "irreconcilable conflict" between them. (*People v. Munoz* (2006) 138 Cal.App.4th 860, 866 (*Munoz*).)

"The right to discharge a retained attorney is, however, not absolute." (*Verdugo, supra*, 50 Cal.4th at p. 311.) A trial court may deny a request to discharge retained counsel "if discharge will result in 'significant prejudice' to the defendant [citation], or if it is not timely, i.e., if it will result in 'disruption of the orderly processes of justice.' " (*Ortiz, supra*, 51 Cal.3d at p. 983.) As *Ortiz* explained, "the 'fair opportunity' to secure counsel of choice provided by the Sixth Amendment 'is necessarily [limited by] the countervailing state interest against which [this] right provides explicit protection: the interest in proceeding with prosecutions on an orderly and expeditious basis, taking into

6

account the practical difficulties of "assembling the witnesses, lawyers, and jurors at the same place at the same time." ' " (*Id.* at pp. 983-984.) Here, the only issue we need address is whether Lopez's request was properly denied as untimely, as the trial court did not suggest it was concerned about potential prejudice to Lopez, and the Attorney General does not argue that the ruling was justified on this basis.

*Ortiz* held that the right to discharge retained counsel applies equally whether a defendant is nonindigent or indigent, as similar concerns about the attorney-client relationship and effectiveness of counsel apply regardless of the defendant's economic status. (*Ortiz, supra*, 51 Cal.3d at p. 984.) "In fact, . . . it may be even more important for an indigent defendant to be able to discharge retained counsel: if his [or her] motion is denied, he [or she] must choose between proceeding with no legal assistance or continuing with a retained attorney reluctantly serving on a pro bono basis. . . . [¶] The risk in compelling a defendant to go to trial with unpaid counsel against his [or her] wishes and those of his [or her] attorney, is that the defendant will 'get what he [or she] paid for.' " (*Id.* at pp. 984-985.)

We review a trial court's denial of a request to discharge retained counsel for an abuse of discretion. (*Verdugo, supra*, 50 Cal.4th at p. 311.) A trial court "must exercise its discretion reasonably: 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.' " (*Ortiz, supra*, 51 Cal.3d at p. 984.) The erroneous denial of a defendant's right to discharge retained counsel is presumptively prejudicial and automatically requires reversal. (*Id.* at p. 988.)

> B.   *The Trial Court Did Not Adequately Consider Whether Allowing Lopez to Discharge Retained Counsel Would Unduly Disrupt the Orderly Processes of Justice.*

Lopez argues that his request to discharge retained counsel was not untimely and that the trial court erred by not inquiring into "whether justice would be unjustifiably delayed by granting the motion." We agree.

7

Although the Attorney General does not contend otherwise, we begin by observing that Lopez's request was not untimely as a matter of law. *People v. Lara* (2001) 86 Cal.App.4th 139 (*Lara*) is instructive. In that case, the defendant's "trial was delayed over one and one-half years," and "[o]n the day the trial was scheduled to begin, [the defendant] requested to discharge his [retained] attorney." (*Id.* at p. 144.) The trial court incorrectly construed the request as a *Marsden* motion and denied it. (*Id.* at pp. 146, 155.) In reversing, *Lara* rejected the Attorney General's argument "that a motion to discharge retained counsel on the first day of trial was necessarily untimely." (*Id.* at pp. 162-163, 166.) To support its conclusion, the appellate court observed that the trial had been repeatedly continued at the request of both parties, the defendant made his request "prior to the [trial] court's consideration of any other motions or the commencement of jury selection," the prosecutor did not object that the request was untimely, and there was "no evidence to suggest that [the defendant] raised [his] complaints in an effort to improperly delay the proceedings." (*Id.* at p. 162.)

The facts are similar here: the case was old and both parties had successfully requested continuances of the trial, Lopez asked to discharge Hammond before it was clear whether the trial would proceed, and the prosecutor did not object to the request. In addition, the trial court did not indicate it believed Lopez had improper motives in seeking to discharge his counsel and, if anything, the record suggests the contrary. Lopez was clearly unsure whether to accept the prosecution's offer, and previous continuances were granted based on Hammond's difficulties in meeting with him. Moreover, Lopez had not retained Hammond for trial, raising the specter discussed in *Ortiz*: the risk that Lopez would " 'get what he paid for' " if he was forced "to go to trial with unpaid counsel against his wishes and those of his attorney." (*Ortiz, supra*, 51 Cal.3d at p. 985.) Lopez may have legitimately wished to obtain counsel who could better help him evaluate the prosecution's offer and, if he decided to reject it, provide more motivated representation at trial. In short, under *Lara*, even though Lopez's case was two years old and he brought his motion right before trial was set to begin, those circumstances alone do not justify the trial court's ruling.

8

The Attorney General suggests that, even if not dispositive, "[t]he timeliness/disruption factor noted in *Ortiz* . . . weigh[ed] heavily in favor of denying [Lopez's] motion." But the Attorney General does not explain why the facts he identifies—that the case was almost two years old and "on the eve of trial," and that Hammond had been Lopez's attorney for most of that time—establish that Hammond's discharge would sufficiently disrupt the administration of justice. Indeed, in making this argument, the Attorney General does not cite any authority other than *Ortiz*, which merely held that the request in that case, "made after [a] mistrial and well before any second trial, was sufficiently timely" because its "timing reflect[ed the] defendant's genuine concern about the adequacy of his defense rather than any intent to delay the retrial." (*Ortiz, supra*, 51 Cal.3d at p. 987.) As we have said, however, there is no indication that Lopez had improper motives, and the case's age and the imminence of trial alone do not suffice.

This case is also distinguishable from *People v. Keshisian* (2008) 162 Cal.App.4th 425, which affirmed the denial of a request to discharge retained counsel in a murder case as untimely. (*Id.* at p. 429.) As was true here, the case was about two years old, the defendant made the request on the day his trial was to start, and he "had neither identified nor retained new counsel." (*Id.* at pp. 427-429.) In *Keshisian*, however, "[t]he prosecution vigorously opposed a further continuance, citing the passage of time since the incident, the age of the case[,] and problems with witnesses." (*Id.* at p. 428.) In contrast, the prosecution in this case previously requested a continuance of trial and did not object to Lopez's request. In addition, the *Keshisian* defendant "asked for and was given an opportunity to address the [trial] court concerning his desire to discharge counsel and his reasons for doing so," and he stated only that he had " 'lost confidence' in his attorneys." (*Id.* at p. 429.) But here, the trial court did not give Lopez the opportunity to speak or inquire into his concerns.

" '[A] court faced with a request to substitute retained counsel must balance the defendant's interest in new counsel against the disruption, if any, flowing from the substitution. [Citation.]' [Citation.] Blanket generalizations about possible delay will

9

not suffice. 'To exercise the power of judicial discretion [in ruling on [a] motion to relieve retained counsel], all material facts and evidence must be both known and considered, together with legal principles essential to an informed, intelligent and just decision.' " (*Munoz, supra*, 138 Cal.App.4th at p. 870, some brackets in original.) In other words, a court cannot *assume* that the discharge of counsel would require "substantial delay in the administration of justice" based only on the request's timing. (*Id.* at pp. 869-870.) Here, however, the only inquiry the trial court made was into how long Hammond had represented Lopez and whether Hammond had been retained for trial, and it did not explicitly weigh any concerns about the case's progress against Lopez's right to discharge his retained attorney.

Nor do we discern any basis for concluding that the trial court made an implied finding that allowing Lopez to discharge Hammond "would result in ' "disruption of the orderly processes of justice unreasonable under the circumstances of the particular case." ' " (*People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1412.) The facts underlying the charged offenses were relatively straightforward, and there is no indication that it "would have taken an inordinate amount of time" for new counsel to come up to speed. (*Munoz, supra*, 138 Cal.App.4th at p. 870; compare *Dowdell*, at p. 1412 [implied finding of untimeliness made where request came "eight days into trial," after "[t]he court spent five days selecting two juries for a complex two-defendant trial" and "the prosecution had already presented the bulk of its evidence"].) And, although the victims here had moved out of state, the prosecutor represented that they could be available for trial "[w]henever we set it." (See *Lara, supra*, 86 Cal.App.4th at p. 164 [refusing to assume given "incomplete record" that cancellation of witnesses' travel plans would cause sufficient disruption].) There may have been other circumstances supporting a finding of unreasonable delay, but they are not apparent from the record, and we cannot speculate about them in order to affirm the ruling. (See *ibid.*)

The Attorney General argues at length that Lopez had the responsibility to "come forward with any conflicts he was having with his attorney" and that the record is devoid of any suggestion "that actual conflict existed." This focus on whether a conflict existed

10

is misguided.  The Attorney General structures his discussion around three factors from a federal habeas case, *Bland v. California Dept. of Corrections* (9th Cir. 1994) 20 F.3d 1469 (*Bland*) (overruled in part on other grounds by *Schell v. Witek* (9th Cir. 2000) 218 F.3d 1017).  *Bland* addressed whether a California trial court's denial of a request to discharge retained counsel violated the defendant's Sixth Amendment rights.  (*Id.* at pp. 1472, 1475.)  The Ninth Circuit Court of Appeals set forth the standard governing the trial court's ruling as follows:

> When reviewing the denial of a motion to substitute counsel for abuse of discretion, we consider the following three factors:  "(1) timeliness of the motion; (2) adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense."  [Citation.]  These elements required under the Sixth Amendment are consistent with California state law which protects the defendant's constitutional right to counsel of his [or her] choice.  *See, e.g.*, *People v. Ortiz*, 51 Cal.3d 975, 275 Cal.Rptr. 191,196-97, 800 P.2d 547, 552-53 (1990); *People v. Marsden*, 2 Cal.3d 118, 84 Cal.Rptr. 156, 159-61, 465 P.2d 44, 47-49 (1970).

(*Bland*, at pp. 1475-1476.)

The three *Bland* factors do not govern a California trial court's assessment of whether to grant a request to discharge retained counsel.  The Ninth Circuit was addressing only whether the denial of the defendant's request violated the Sixth Amendment.  (*Bland, supra*, 20 F.3d at p. 1471.)  Although "[t]he right of a nonindigent criminal defendant to discharge his [or her] retained attorney, with or without cause," implicates the federal constitutional right to counsel, it also stems from the California Constitution and statutory law.  (*Ortiz, supra*, 51 Cal.3d at p. 983; see *People v. Lau* (1986) 177 Cal.App.3d 473, 478; *People v. Stevens* (1984) 156 Cal.App.3d 1119, 1127.)  And under California law there is no requirement that a defendant seeking to discharge retained counsel demonstrate an existing conflict.  Instead, a trial court must grant such a request unless doing so would prejudice the defendant or unduly delay the administration of justice.  (*Ortiz*, at pp. 983-987.)

If anything, the *Bland* factors better track the relevant considerations under *Marsden*, the other California decision the Ninth Circuit cited. (See *People v. Smith* (2003) 30 Cal.4th 581, 606-607 [three factors discussed in *Bland* "are consistent with California law under [*Marsden*] and its progeny"].) As we have said, under *Marsden*, an indigent defendant seeking to replace appointed counsel must establish either an irreconcilable conflict with counsel or counsel's incompetence. (*Munoz, supra*, 138 Cal.App.4th at p. 866.) Thus, although a defendant bringing a *Marsden* motion has the burden to demonstrate good cause, and a trial court therefore "is not obligated to initiate a *Marsden* inquiry sua sponte," a defendant who seeks to discharge retained counsel is presumptively entitled to do so unless the court makes a finding of prejudice or untimeliness. (*Lara, supra*, 86 Cal.App.4th at pp. 150-152; see also *Munoz*, at pp. 866-867 [*Marsden* standard "is more stringent than what *Ortiz* requires"].) Lopez did not have any burden to demonstrate a conflict with Hammond. Thus, despite the Attorney General's extended discussion of the issue, we find it of little significance that the record does not disclose any such conflict.

In sum, we conclude that the trial court erred by denying Lopez's request to discharge retained counsel, and reversal is therefore required. (*Ortiz, supra*, 51 Cal.3d at p. 988.) On remand, the court must permit Lopez to discharge Hammond, and "[o]nce new counsel is appointed, the case shall proceed anew from the point [Lopez] originally sought to discharge his attorney." (*Munoz, supra*, 138 Cal.App.4th at p. 871.) Thus, the court must permit Lopez to withdraw his plea.

### III.
#### DISPOSITION

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

_____

Humes, P.J.

We concur:

_____

Dondero, J.

_____

Banke, J.

*People v. Lopez*  A148539

Trial Court:

     Napa County Superior Court


Trial Judge:

     Hon. Mark S. Boessenecker


Counsel for Defendant and Appellant:

     Jonathan Soglin, Executive Director, First District Appellate Project
     Richard Such, First District Appellate Project


Counsel for Plaintiff and Respondent:

     Xavier Bacerra, Attorney General

     Gerald A. Engler, Chief Assistant Attorney General

     Jeffery M. Laurence, Senior Assistant Attorney General

     Laurence K. Sullivan, Supervising Deputy Attorney General

     Catherine A. Rivlin, Supervising Deputy Attorney General

     Karen Z. Bovarnick, Deputy Attorney General


*People v. Lopez*  A148539