Filed 4/13/21  P. v. Portillo CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FELIPE JAIME PORTILLO,<br><br>    Defendant and Appellant. | B302192<br><br>(Los Angeles County<br>Super. Ct. No. YA099065) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hector M. Guzman, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Felipe Jaime Portillo appeals from a judgment entered after a jury convicted him of two counts of lewd acts upon a child and two counts of continuous sexual abuse of a child and found true the multiple victim allegations. Portillo contends the trial court abused its discretion in denying his request to discharge his retained counsel after trial had commenced. He also asserts the court abused its discretion in denying his request made in the middle of his sentencing hearing to represent himself. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Information and Arraignment*

The information charged Portillo with committing a lewd act upon Kayla P., a 14- or 15-year-old child (Pen. Code,[1] § 288, subd. (c)(1); count 1); committing a lewd act upon Alexis P., a child under the age of 14 (§ 288, subd. (a); count 2); and continuous sexual abuse of Angelica S. (count 3) and Calista P. (count 4), each of whom was a child under the age of 14 (§ 288.5, subd. (a)). The information specially alleged as to counts 2, 3, and 4 that Portillo committed the offenses against more than one victim (§ 667.61, subds. (b), (e) & (j)(2)). Portillo pleaded not guilty and denied the allegations.

At his arraignment on April 11, 2019, Portillo substituted E.J. Montanez in place of his former retained attorney. After multiple continuances, the trial was set for September 5, 2019.

---

[1]     All undesignated statutory references are to the Penal Code.

B.       *Portillo's Request To Discharge His Retained Counsel*

On September 5, 2019 the trial court heard evidentiary motions, then confirmed counsel were ready to start jury selection.  After a recess, Montanez informed the court Portillo had "changed his mind one more time" and wanted a court trial.[2] The court noted it had 60 prospective jurors outside the courtroom who were ready for jury selection.  The court advised Portillo that if he waived his right to a jury trial, the court would decide the question of guilt.  Portillo stated, "I understand, Sir. . . .  I have a concern about my defense.  That's the only concern that I have."  The court responded, "That's a different matter altogether."  Portillo stated, "I'm ready to go to trial, but I'm not so sure my counsel is ready for me."  The court asked Montanez whether he was ready to proceed to trial, to which Montanez responded, "Yes, I am, Your Honor, I'm ready to proceed right now, either with a jury or with a court trial." Portillo then stated, "I [will] stick to the jury trial, Your Honor." The prospective jurors were brought into the courtroom for jury selection.

The jurors were sworn in on Friday, September 6.  After the trial court provided preliminary instructions to the jury, the trial was recessed until Monday, September 9 at 10:30 a.m.  On September 9, before the jurors entered the courtroom, Portillo attempted to address the trial court directly.  The court instructed Portillo to direct his comments to his attorney and cautioned Portillo that he would be removed from the courtroom

_____

[2]       It appears from the record that the court discussed with counsel and Portillo the prior day whether Portillo wanted to waive his right to a jury trial.

3

if he continued to address the court directly and make distracting gestures.

The court asked counsel whether they were ready to proceed with opening statements. Before they could respond, Portillo stated, "I do not have an attorney. I request another attorney." Portillo explained, "I want to fire Mr. Montanez, Your Honor. Due process . . . is not being done to me, my constitutional rights . . . ." The court observed Portillo had been "a distraction or distracted the court for several days now," and he had engaged in "obstructionist" conduct and was "simply trying to derail these proceedings at this point."[3] The court reminded Portillo of his "back and forth on waiving a jury, which almost became comical at one point, the sort of games that you were playing." The court warned Portillo, "If you continue to be a distraction, you will be removed from the courtroom." Following a further colloquy, Portillo repeated, "I want to fire [Montanez]. This is not my attorney—." The court interrupted, "Sir, you're once again speaking to the court. You are not speaking to your attorney."

When the clerk advised the trial court that all jurors were assembled, Portillo asserted, "I would like to be removed from the courtroom." When the court asked Portillo whether he wanted to voluntarily absent himself from the courtroom, Portillo answered, "No, forcibly. I protest this man to be my lawyer; under protest, I do not wish to continue with him. My rights have been violated by him, my constitutional rights . . . ." The court reiterated its belief Portillo was intentionally trying to delay the proceedings,

---

[3] The record does not include transcripts from the proceedings held between the arraignment and the first day of trial.

4

noting Portillo continued to address the court and "gesture[d] with his hands in the most bizarre way to the court." When the court inquired of Portillo whether he could behave in front of the jury, Portillo reiterated, "I cannot stay in this trial, because I don't have an attorney. I am under protest. I'd object to my attorney. I cannot proceed with this man."

The court stated it was going to bring in the jury and asked Montanez for his view on removal of Portillo from the courtroom. Montanez responded, "I don't know how he will act. The only thing I can tell the court is that I'm ready and willing to try the case. I've been preparing for this for months. I know this case inside and out, and he has just had some difference of opinions with me." The court asked Portillo whether he wanted to be present in the courtroom, and Portillo answered yes. At this point the jury was brought in.

C.    *The Trial*

The trial proceeded with opening statements and witness testimony. Kayla, Portillo's grandniece, testified on the morning of September 9. She was 15 years old at the time of trial. Kayla described an incident that occurred in August 2018, when she was 14 years old. She was at Portillo's home with her cousins when Portillo grabbed her by the face, kissed her, and made a sexual comment to her. Portillo's granddaughter Angelica. testified on the afternoon of September 9. She was 13 years old at the time of trial. She described sexual abuse by Portillo starting when she was six or seven years old, including Portillo putting his penis in her mouth and touching her inappropriately.

Portillo's daughter Angie (Angelica's mother) also testified on September 9 about Portillo's sexual abuse of her as a child.[4]

The next day Portillo's granddaughters Alexis and Calista testified about inappropriate touching and other sexual conduct by Portillo while they were growing up. Alexis and Calista were 15 and 20 years old, respectively, at the time of trial.

Portillo and his wife Brenda testified in his defense. Portillo denied he had ever sexually abused the young women. He explained he and his family were very affectionate. Further, Angie always wanted to be the "center of attraction," she would often "make up stories," and she exaggerated and lied to receive attention. Brenda similarly testified that Angie tends to exaggerate.

The parties rested on September 12. After instructions and closing arguments, the jury commenced deliberations. The next day the jury found Portillo guilty on all counts and found the multiple victim allegations to be true. Portillo waived time, and the court set October 29, 2019 for the sentencing hearing.

D.     *Portillo's Post-conviction Request for Self-representation*

At the October 29, 2019 sentencing hearing, the prosecutor and Montanez stated they were prepared to proceed with sentencing. The prosecutor read victim impact statements from Calista, Angelica, and the mother of Calista and Alexis. Kayla, her mother Nicole P., and Angie read their own victim impact statements. The People submitted on their sentencing memorandum. Montanez requested the court exercise its

---

[4]     Angie's testimony was admitted pursuant to Evidence Code section 1108. Portillo does not challenge the admission of Angie's testimony on appeal.

6

discretion to "sentence Mr. Portillo concurrently whenever the court can."

After Montanez submitted on sentencing, Portillo requested to address the court. He stated, "I'd like to exercise the right to go pro per so I can address the court myself. There's some new evidence I'd like to introduce. I'd like to go pro per and ask for a retrial." The court responded, "All right. . . . In regard to sentencing it's a little late for that, sir. . . . Actually you've gone back and forth on your request, so this has been an ongoing problem sir." Portillo explained his attorney was refusing to file a motion for new trial. In response to an inquiry by the court, Montanez said he was unaware of any new evidence that was not known or introduced at trial. The court stated, "We've had this continuing problem from day one, as you know . . . . [¶] . . . [¶] To me it's always been a tactic on your part, an obstructionist tactic on your part to delay the matter, and that's what's happening at this time as well, so your request to go pro per is denied." Portillo repeated he wanted to move for a new trial. The court responded it had already denied Portillo's request to represent himself, and Portillo would be removed from the courtroom if he continued to address the court directly. The court took a 10-minute recess.

When the proceedings resumed, the court acknowledged Portillo's right to represent himself and that this was his first request to do so, but it stated the request was untimely. The court asked Portillo why he waited so long to request to represent himself. Portillo answered that Montanez had not represented him adequately from the beginning, stating, "Nobody has told my story." The court responded that Portillo had an opportunity to provide his side of the story through his testimony, but the jury

did not believe him. Portillo affirmed that was "correct," but it was because Montanez had failed to ask the right questions.

After further questioning by the court, Portillo stated he needed an investigator to talk to two of his daughters, Kristy and Jacqueline, who were present during the trial but did not testify. According to Portillo, Kristy's and Jacqueline's testimony would negate Angie's testimony regarding the "uncharged charge that was used here against me." However, Portillo indicated he could not provide any details about their proposed testimony without reviewing the transcript of the trial testimony. Upon further inquiry from the court, Portillo stated Kristy "will contradict everything that [Angie] said about the things that happened throughout her life. . . . She will contradict just about every testimony that they gave." Jacqueline would similarly "contradict the testimony that was given here in the court. . . ." The court expressed its belief that Portillo was "playing games" and "making up things again" and the purported new evidence was simply a "rehash [of] a defense that was already put on in front of the jury." The court again asked Montanez if there were grounds for moving for a new trial, to which Montanez responded, "There was really no legal basis for a motion for a new trial. There's no new evidence that was not introduced, was not known." In response to the court's further inquiry, Portillo stated if he was granted pro. per. status, he would need a continuance of between 30 and 60 days from his receipt of a trial transcript.

The court then closed the courtroom to talk further with only Portillo and Montanez present. Following the ex parte proceeding, the court denied Portillo's request to represent himself, finding the request—made in the middle of the

8

sentencing hearing—was untimely. The court explained Portillo failed to describe the new evidence with any specificity, only generally alluding to the fact his two daughters would present further testimony in his defense.

The trial court sentenced Portillo to 32 years to life in prison. Portillo timely appealed.

## DISCUSSION

A. *A Defendant's Request To Discharge Retained Counsel*
    1. *Governing law*

An nonindigent defendant's right to counsel in the Sixth Amendment of the United States Constitution generally includes the right to choose who will represent him or her. (*United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, 144; *People v. Maciel* (2013) 57 Cal.4th 482, 512 (*Maciel*); *People v. Verdugo* (2010) 50 Cal.4th 263, 310-311 (*Verdugo*).) A nonindigent defendant has the right "to discharge his retained attorney, with or without cause." (*People v. Ortiz* (1990) 51 Cal.3d 975, 983; accord, *Maciel*, at p. 512 [a defendant's right to counsel "'reflects not only a defendant's choice of a particular attorney, but also his decision to discharge an attorney whom he hired but no longer wishes to retain.'"]; *Verdugo*, at p. 311 [same].) However, the authority to discharge retained counsel is not absolute. (*Maciel*, at p. 512; *Verdugo*, at p. 311.) The defendant's right "'is necessarily [limited by] the countervailing state interest against which [this] right provides explicit protection: the interest in proceeding with prosecutions on an orderly and expeditious basis, taking into account the practical difficulties of "assembling the witnesses, lawyers, and jurors at the same place at the same time."'" (*Ortiz*,

at pp. 983-984; accord, *People v. Lopez* (2018) 22 Cal.App.5th 40, 47.)

"'The trial court has discretion to "deny such a motion if discharge will result in 'significant prejudice' to the defendant [citation], or if it is not timely, i.e., if it will result in 'disruption of the orderly processes of justice.'"'" (*Maciel, supra*, 57 Cal.4th at p. 512; accord, *Verdugo, supra*, 50 Cal.4th at p. 311.) "The trial court, however, must exercise its discretion reasonably: 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.'" (*People v. Ortiz, supra*, 51 Cal.3d at p. 984; see *Maciel*, at p. 513 [in evaluating the timeliness of a motion to discharge, "the trial court considers the totality of the circumstances"]; *People v. Keshishian* (2008) 162 Cal.App.4th 425, 429 [trial court should "'balance the defendant's interest in new counsel against the disruption, if any, flowing from the substitution'"].)  We review the trial court's denial of a request to discharge retained counsel for an abuse of discretion.  (*Lopez, supra*, 22 Cal.App.5th at p. 47; see *Verdugo*, at p. 311 [finding no abuse of discretion].)

> 2.    *The trial court did not abuse its discretion in denying Portillo's request to discharge his retained counsel*

Portillo contends the trial court erred in denying his request to discharge Montanez because the request was timely and granting it would have had a minimal impact on the proceedings.  Portillo also argues the court improperly based its decision on Portillo's "obstructionist" behavior and not on the actual disruption the request would have caused.  The trial court did not abuse its discretion.

10

Portillo's request to discharge Montanez was untimely. Although a request made on the first day of trial is not "necessarily untimely" (*People v. Lara* (2001) 86 Cal.App.4th 139, 163), Portillo made his request after the trial had commenced.[5] (See *Perryman v. Superior Court* (2006) 141 Cal.App.4th 767, 776 [trial begins when jury is sworn in and jeopardy attaches].) The trial court properly considered the untimeliness of Portillo's request as a "significant factor" in its denial. (See *People v. Courts* (1985) 37 Cal.3d 784, 792 & fn. 4 [contrasting defendant's request to discharge his attorney more than a week before trial with other courts' denials of "eve-of-trial, day-of-trial, and second-day-of-trial" requests where the untimeliness was "a significant factor" justifying the denial absent "compelling circumstances to the contrary"].)

Further, contrary to Portillo's contention, granting his request to discharge Montanez would have had a significant impact on the trial and witnesses. By the time of Portillo's request on September 9, the jurors had returned to court and the prosecution's witnesses were ready to testify. Two of the minor victims, 15-year-old Kayla and 13-year-old Angelica, testified that day, as well as Angie. The next day 15-year-old Alexis and 20-year-old Calista testified.[6] At no time did Portillo suggest he

---

[5] Although Portillo expressed a concern about Montanez's representation before jury selection commenced (on September 5), he did not request at that time to discharge his attorney. Portillo does not contend on appeal that his comments prior to jury selection constituted a timely request to discharge his attorney.

[6] Further, as section 288, subdivision (d), provides, in sexual abuse cases "the court shall consider the needs of the child victim" and take steps "to prevent psychological harm to the child victim . . . resulting from participation in the court process."

11

had another attorney ready to try the case, nor did he state how much time he would need to secure new counsel. Although this was not a complex case, a new attorney would have needed significant time to interview witnesses and prepare for trial. Under these circumstances, granting Portillo's request would likely have resulted in the loss of many jurors (and perhaps a mistrial) and required the minor victims and other witnesses to return to court, disrupting "the orderly processes of justice."[7] (*Maciel, supra*, 57 Cal.4th at p. 512 [trial court did not abuse its discretion in denying defendant's motion to discharge retained counsel made six weeks before trial where defendant had not identified substitute counsel and new counsel would need significant time to prepare for trial]; see *People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1412 [trial court did not abuse its discretion in denying defendant's request on eighth day of trial to discharge retained counsel because it impliedly found that

---

Here, three of the four victims were 15 years old or younger and came to the trial court to recount the sensitive details of Portillo's sexual abuse.

[7] To the extent the trial court based its decision on Portillo's earlier indecisiveness about whether to proceed with a jury or court trial, we agree with Portillo this was not a proper consideration in deciding whether to grant Portillo's request to discharge his attorney given the significance of a defendant's decision whether to waive his or her constitutional right to a jury trial. (See *People v. Collins* (2001) 26 Cal.4th 297, 305 [the decision to waive the right to a jury trial must be "'made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it'"].) But, as discussed, other appropriate factors supported the court's decision, including the impact on the trial and witnesses.

12

granting a continuance to retain new counsel could cause an unreasonable disruption from loss of too many jurors]; *People v. Keshishian, supra*, 162 Cal.App.4th at p. 29 [trial court did not abuse its discretion in denying defendant's motion to discharge retained counsel on first day of trial after case had been pending for two-and-a-half years, witnesses were scheduled, and defendant had not retained or identified new counsel].)

Portillo's reliance on *People v. Munoz* (2006) 138 Cal.App.4th 860 is misplaced. There, the Court of Appeal concluded the trial court abused its discretion in denying defendant's motion to discharge his retained attorney 40 days after the defendant's conviction and nine days before his sentencing hearing. (*Id.* at pp. 844, 849.) The court explained the trial lasted only two days and was not complicated, so it would not take "an inordinate amount of time" for a new attorney to decide whether to file a motion for new trial. (*Id.* at p. 849.) In contrast to *Munoz*, the jury here had been empaneled and any new attorney (once retained) would have needed to prepare for trial, not simply review the record for the purpose of filing a motion for new trial. The other cases relied on by Portillo where the defendants sought to discharge their retained counsel on the day set for trial are also distinguishable. (See *People v. Lopez, supra*, 22 Cal.App.5th at p. 48 [trial court abused its discretion in denying defendant's motion to discharge retained counsel on date set for trial where defendant was dissatisfied with representation, case was two years old, it was not clear trial would proceed, and the prosecutor did not object to the request]; *People v. Lara, supra*, 86 Cal.App.4th at pp. 162-163 [trial court abused its discretion in denying defendant's request to discharge retained counsel on first day of trial where attorney did not

13

appear prepared, defendant made request "at the first possible opportunity," and prosecutor did not object to motion as untimely].)

B.    *A Defendant's Right to Self-representation*
        1.    *Governing law*

A defendant has a constitutional right to self-representation if his or her request is timely and asserted unequivocally.  (*Faretta v. California* (1975) 422 U.S. 806, 835; accord, *People v. Jenkins* (2000) 22 Cal.4th 900, 959.)  "'When "a motion to proceed *pro se* is timely interposed, a trial court must permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so, irrespective of how unwise such a choice might appear to be."'"  (*People v. Butler* (2009) 47 Cal.4th 814, 824; accord, *People v. Dent* (2003) 30 Cal.4th 213, 217.)  A post-conviction motion for self-representation may be timely if brought a reasonable time before sentencing.  (See *People v. Miller* (2007) 153 Cal.App.4th 1015, 1023-1024 [trial court erred in denying defendant's timely request to represent himself made after the jury verdict and two months before the sentencing hearing]; cf. *People v. Doolin* (2009) 45 Cal.4th 390, 455 [defendant's motion on the day of sentencing to represent himself was untimely and subject to trial court's discretion].)

If a defendant's motion to proceed pro. per. is untimely, self-representation is no longer a matter of right and instead rests within the court's discretion.  (*People v. Jenkins, supra*, 22 Cal.4th at p. 959; *People v. Windham* (1977) 19 Cal.3d 121, 129 (*Windham*).)  In ruling on an untimely request for self-representation, the court "shall inquire sua sponte into the

14

specific factors underlying the request thereby ensuring a meaningful record in the event that appellate review is later required." (*Windham*, at p. 128.) Among the factors to be considered are "'the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion.'" (*Jenkins*, at p. 959; accord, *Windham*, at p. 128.) We review the trial court's denial of a motion for self-representation for an abuse of discretion. (*Jenkins*, at p. 962.)

      2.    *The trial court did not abuse its discretion in denying Portillo's request for self-representation*

Portillo requested to represent himself at the end of the sentencing hearing, after the presentation of victim impact statements and after both counsel had submitted on sentencing. Portillo's attorney had urged the trial court to impose concurrent sentences on the four counts to the extent possible. Portillo contends the trial court abused its discretion in denying his request because the *Windham* factors were in his favor: Portillo had conflicts with his attorney from the beginning of his representation; Portillo possessed new evidence he wanted to present to the court in a motion for new trial; and Portillo proposed a reasonable 30- to 60-day continuance to file the motion. There was no abuse of discretion.

Because Portillo did not request to represent himself within a reasonable time before sentencing, his request was untimely and subject to the court's discretion. (See *People v. Doolin, supra*, 45 Cal.4th at p. 455.) Although the court did not hold any

15

hearings between September 13, 2019 (when the jury rendered its verdict) and October 29, 2019 (the date of the sentencing hearing), Portillo could have made a written request to represent himself or made a request through his attorney during the six weeks leading up to his sentencing hearing. Instead, Portillo made his request at the *conclusion* of the sentencing hearing, just before the trial court pronounced its sentence.

With respect to the *Windham* factors, this was Portillo's first request to represent himself. Further, he stated the basis for his request was to file a motion for new trial, which his attorney refused to file. However, when pressed by the trial court to disclose the new evidence that would support his motion,[8] Portillo only vaguely asserted his two daughters, Kristy and Jacqueline, would testify and cast doubt on the veracity of Angie's testimony regarding the uncharged sex offenses. Portillo could not point to any specific testimony Kristy and Jacqueline would present or any other evidence that would contradict the testimony of the four named victims. And any testimony Kristy and Jacqueline could have presented would not have constituted "new evidence . . . discovered material to the defendant, . . . which he could not, with reasonable diligence, have discovered and produced at the trial." (§ 1181(8).) Further, Portillo acknowledged he would need 30 to 60 days from his receipt of the trial transcript to prepare his motion for new trial. Although this

---

[8]     "'To grant a new trial on the basis of newly discovered evidence, the evidence must make a different result probable on retrial.' [Citation.] '[T]he trial court has broad discretion in ruling on a new trial motion . . . ,' and its 'ruling will be disturbed only for clear abuse of that discretion.'" (*Verdugo, supra*, 50 Cal.4th at p. 308.)

delay was not as significant as delaying a jury trial, the four young victims had a right to be present at the sentencing and to the finality that sentencing would bring.[9]  In light of Portillo's failure to support his sole stated reason for representing himself, the court acted within its discretion in denying Portillo's request.[10]  (See *People v. Doolin, supra*, 45 Cal.4th at pp. 454-455 [trial court did not abuse discretion in denying untimely motion for self-representation made at sentencing hearing where defendant was unable to provide details on new evidence to support motion for new trial]; *Windham, supra,* 19 Cal.3d at p. 129 [denial of untimely motion for self-representation was not an abuse of discretion because the sole reason for the motion was that defendant believed trial counsel did not present a strong case for self-defense, but the facts did not support the defense].)

---

[9]     Marsy's Law provides victims with the right "'[t]o be heard . . . at any proceeding . . . involving a . . . plea, sentencing, . . . or any proceeding in which a right of the victim is at issue.'" (*Crump v. Appellate Division of Superior Court* (2019) 37 Cal.App.5th 222, 237, quoting Cal. Const., art. I, § 28, subd. (b)(8).)

[10]     Because Portillo failed to provide an adequate basis for his motion for new trial, the trial court likewise did not abuse its discretion in implicitly denying Portillo's request for a 30- to 60-day continuance to file his motion.  (See § 1050, subd. (e) ["Continuances shall be granted only upon a showing of good cause."]; *People v. Rhoades* (2019) 8 Cal.5th 393, 451 [denial of continuance of sentencing hearing reviewed for abuse of discretion].)

## DISPOSITION

The judgment is affirmed.

FEUER, J.

We concur:

PERLUSS, P. J.

McCORMICK, J.[*]

---

[*] Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.