Filed 4/26/21  P. v. Goitortua CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>VINCENT GOITORTUA,<br><br>　　　Defendant and Appellant. | D076772<br><br><br><br>(Super. Ct. No. SCD280798) |

APPEAL from a judgment of the Superior Court of San Diego County, Steven E. Stone, Judge.  Affirmed.

Kenneth H. Nordin, under the appointment of the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Allison V. Acosta and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Vincent Goitortua, a bar patron, was charged with a single count of assault with a deadly weapon (a cocktail glass) arising out of an altercation with a bartender at closing time. Three days into a five-day jury trial, Goitortua's retained defense attorney advised the court that her client wished to discharge her and retain new counsel. The asserted basis for this request was counsel's admission that she made certain errors in preparing for trial. After discussing the matter with the prosecutor, defense counsel, and to a limited extent Goitortua, the court denied the request based largely on grounds that switching defense attorneys would be an unwarranted mid-trial disruption of the proceedings. Finding no abuse of the trial court's broad discretion in balancing the relevant factors, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*The Altercation at the Bar*

On a February evening, Goitortua visited a bar accompanied by two friends. They opened bar tabs and stayed for several hours. At around 1:30 a.m., bartender Jeremiah A. announced last call and Goitortua closed out his bar tab. There was a dispute in the testimony as to whether Goitortua left a tip. According to Jeremiah, Goitortua paid his tab by credit card but left a cash tip. He claimed he was not offended by the amount of the tip. Goitortua testified that he left no tip and that Jeremiah commented, "Really bro, no tip?" When Goitortua responded, "Yes, no tip," Jeremiah allegedly called him a "shitty tipper."[1]

---

[1] One of his friends corroborated much of Goitortua's version of the tip dispute, but explained that he mollified Jeremiah by leaving a cash tip.

Goitortua left the bar carrying a cocktail glass.[2]  Seeing this, Jeremiah followed and attempted to retrieve the glass, telling Goitortua he could not be outside the bar with an open container of alcohol.  Goitortua appeared ready to return the glass to Jeremiah but he never released his grip.  Instead, he placed his other hand on top of Jeremiah's and pulled the glass back toward himself, bringing Jeremiah's arm along with.  As he was being pulled, Jeremiah struggled to free himself from Goitortua's grasp and began to fall.  At that point, Goitortua hit Jeremiah on the left side of his head with the cocktail glass, breaking the glass.  The blow left a one and one-half inch gash above Jeremiah's left ear.  Jeremiah also claimed that Goitortua punched him twice in the jaw as he attempted to get up.

According to Goitortua, Jeremiah aggressively approached him to retrieve the glass.  Goitortua tried to explain that it was only water, but Jeremiah grabbed the glass and pulled Goitortua toward him.  Goitortua testified that it was only after Jeremiah pushed him into the street and punched him in the ribs that he punched back with the hand that was holding the glass.

As Goitortua stepped back, Jeremiah felt blood running down his head and saw blood on Goitortua's hands.  Goitortua similarly testified that after he hit Jeremiah, he saw blood coming out of his right hand.

As Jeremiah called 911, Goitortua started to walk away from the bar. He said he was frightened when he heard others outside the bar shouting at him.  Concerned that Goitortua was fleeing, Jeremiah followed as he spoke to the 911 operator.  Another bar patron followed as well.  When Goitortua

---

[2]     Much of what happened inside and outside the bar was captured on two surveillance videos that were admitted into evidence and played for the jury. The latter part of the video outside the bar, from the point in time that Jeremiah was struck by the cocktail glass, is less than clear.

began to run, the other patron intercepted him. Ultimately, with Jeremiah's assistance, he pinned Goitortua until police arrived about 20 seconds later. Goitortua claimed he was attacked by two individuals, one of whom was Jeremiah, who punched him in the face multiple times while he was on the ground.

*Arrest, Criminal Charges and Trial*

Goitortua was charged with assault with a deadly weapon. (Pen. Code, § 245, subd. (a)(1).) He retained private counsel. During in limine motions, the People objected to the admission of the papers Goitortua received when he was discharged from the hospital emergency room a day after the incident for the purpose of showing that he suffered a concussion. The objection was based on both lack of adequate foundation and hearsay.

In a discussion with counsel at the conclusion of the third day of trial, the court expressed some concerns about the admissibility of the discharge papers, but deferred a ruling. Just before the court recessed for the day, defense counsel advised the judge, "I think there's an issue. I think it's that maybe the defendant is considering relieving counsel." The judge responded, "I'm not going to deal with that right now. I can deal with that tomorrow morning."

The following morning before the jurors arrived, defense counsel provided the court with further information about Goitortua's request to relieve counsel. Counsel explained that she "informed the client of some procedural mistakes that [she] made, and he arrived at the conclusion that [she] was ineffective and wanted to replace [her]." According to counsel, the "procedural mistakes" concerned her failure to timely subpoena medical

4

records and obtain a medical expert.[3] The court noted that because defense counsel was retained, the client was entitled to request permission to replace his lawyer and "I don't need to know the reasons." Goitortua confirmed that he wanted a different attorney. In response, the prosecutor argued primarily that defense counsel had not been ineffective.

The court denied Goitortua's request to replace counsel. Although it agreed with the prosecutor that defense counsel had not rendered ineffective assistance, it acknowledged that a criminal defendant generally has a right to be represented by the counsel of his choice subject to certain limitations, and that the issue was "whether the defendant can replace counsel *at this point.*" (Italics added.) In the court's view, it had "discretion to refuse the defendant's request to substitute counsel if granting that would delay the trial or cause other interference with the process of justice." In exercising this discretion, the judge proposed to "balance the defendant's interest in new counsel against the disruption, if any, coming from the substitution." Noting that "we're on the third day of trial, fourth day if you include jury selection," the court concluded that "[n]o counsel could get up to speed to finish this trial at this time. . . . There would be a great delay in the trial. I'd have to discharge the jury and start over."

Having expressed its views, the court permitted both counsel and the defendant to note anything further for the record. Goitortua explained the basis for his request: "When I was looking to get counsel after all of the events occurred, I was right away rejected multiple times. I was already—

---

[3]    Counsel also mentioned her failure to subpoena a police officer. This became a nonissue when the prosecutor indicated she had subpoenaed the officer and would make her available to testify that afternoon if defense counsel wished. Ultimately defense counsel chose not to call the officer, a decision Goitortua expressly approved.

I felt I was already presumed guilty, and I felt low. And then I went with her, and she took my case. That's the reason. And then now that we're here, I realize maybe I should have continued searching. And that's it, sir."

Ultimately, Goitortua testified about his visit to a hospital emergency room the day after the incident. Complaining of dizziness, nausea, and ringing in his ears as well as pain in his shoulders, neck and ribs, Goitortua reported to hospital personnel that he had been beaten by two men the day before. He was examined and discharged. Based on this foundation, the court received the hospital discharge papers for the limited nonhearsay purpose of showing that Goitortua sought and obtained treatment.[4]

DISCUSSION

The Sixth Amendment guarantees a defendant the right to retain his or her counsel of choice. (*People v. Verdugo* (2010) 50 Cal.4th 263, 310 (*Verdugo*).) And implicit in the right to select an attorney is the right to replace that attorney if the client so chooses. (*Id.* at p. 311.) But the right to discharge retained counsel "is not absolute." (*People v. Ortiz* (1990) 51 Cal.3d 975, 983 (*Ortiz*).) The court may deny a motion to replace a defendant's lawyer if the timing of the request would " 'disrupt[] . . . the orderly processes of justice.' " (*People v. Gzikowski* (1982) 32 Cal.3d 580, 587; quoting *People v. Crovedi* (1966) 65 Cal.2d 199, 208.) The trial court's decision on such a request is reviewed for abuse of discretion in light of its " 'wide latitude in balancing the right to counsel of choice against the needs of fairness' " and " 'the demands of its calendar.' " (*Verdugo, supra,* 50 Cal.4th at p. 311; quoting *United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, 152; see also

---

[4]    The court also admitted various photographs taken by Goitortua to document his claimed injuries. It reviewed and declined to admit the hospital medical records, sustaining the People's hearsay objection.

6

*People v. Lopez* (2018) 22 Cal.App.5th 40, 47.) But if the court erred in denying a defendant's request to substitute counsel of his or her own choosing, reversal is automatic. (*Ortiz, supra,* 51 Cal.3d at p. 988.)

Counsel represented that Goitortua's request to replace her was prompted by her disclosure that she had made certain errors in preparing for trial. And while a request to dismiss retained counsel does not *require* any showing of counsel's ineffectiveness, this does not mean "the trial court cannot properly consider the absence of such circumstances in deciding whether discharging counsel would result in disruption of the orderly processes of justice." (*People v. Maciel* (2013) 57 Cal.4th 482, 513; accord *People v. O'Malley* (2016) 62 Cal.4th 944, 1004.) Indeed, a court would be understandably more accommodating of some disruption and delay if it were necessary to assure competent representation of a criminal defendant. Conversely, the court's interest in the orderly and efficient administration of justice has greater relative weight if the defendant's reason for changing lawyers is more a function of subjective dissatisfaction than objective inadequacy.

Here, the court expressly found that counsel had provided adequate representation, a conclusion that is well supported. Although certain hospital records were not admitted,[5] Goitortua's discharge papers were received into evidence, albeit for the limited nonhearsay purpose of showing that he sought treatment for his claimed injuries. But more importantly, perhaps, counsel's claimed errors had little if anything to do with the

---

[5]     The court's ruling to exclude the hospital records made clear it was not based on anything defense counsel failed to do. Rather, the court was concerned that the alleged diagnosis was a medical opinion that was not admissible under the hearsay exception for a business record of an "act, condition, or event." (Evid. Code, § 1271; see *People v. Reyes* (1974) 12 Cal.3d 486, 503; *People v. Young* (1987) 189 Cal.App.3d 891, 911–913.)

relevant issues in the case. The nature and extent of Goitortua's injuries were established not only by his testimony but more concretely by abundant photographic evidence. The dispute was not *if* Goitortua was injured during the incident, but whether he was injured *before* he hit Jeremiah. Hospital records could never establish the exact timing of the injuries Goitortua suffered.

The asserted purpose of the hospital records and medical expert testimony in this case was to establish that Goitortua suffered a concussion. Yet Goitortua never asserted that he struck Jeremiah with the cocktail glass in response to being hit in the head. His claim of self-defense was based on being pushed into the street and punched in the ribs. What happened several minutes later and two blocks away from the bar, when he was allegedly chased and hit in the head by Jeremiah and the unnamed bar patron, was irrelevant to whether Goitortua committed an assault with a deadly weapon.

Having determined that defense counsel was not ineffective, the trial court proceeded to apply the proper standard in evaluating Goitortua's mid-trial request to replace his lawyer with someone else. It goes without saying, perhaps, that a motion to replace counsel after a jury trial has begun involves more significant concerns than a similar request made before the commencement of trial. Here the trial court concluded, quite reasonably, that granting Goitortua's request would substantially delay the trial and thus interfere with the process of justice. In reaching this conclusion, the court found that any competent criminal defense attorney would require a continuance in order to substitute in as trial counsel. It further found that a continuance of this nature would almost certainly necessitate a mistrial and discharge of the jury. These findings fully justified the denial of Goitortua's motion. (See *People v. Keshishian* (2008) 162 Cal.App.4th 425, 429 [indefinite

8

continuance would have been required because defendant had neither identified nor retained new counsel].)

Goitortua faults the trial court for failing to conduct a more searching inquiry as to why he wanted to change lawyers. In particular, he points to the fact that it was only after the court had announced it would deny the request to replace counsel that it turned to Goitortua and allowed him to express his reasons on the record. But this was an unusual circumstance in which the asserted basis for the request was counsel's admitted errors, not a conflict between lawyer and client. Having listened to counsel's description of her alleged mistakes, Goitortua simply verified that he wanted to substitute new counsel. The trial court reasonably assumed that counsel had accurately communicated the basis for Goitortua's request.[6] It was to confirm this reasonable assumption that the judge provided Goitortua with the opportunity say anything he wanted to add for the record. Given that chance, Goitortua did little more than express ill-defined second thoughts and feelings of buyer's remorse: "[N]ow that we're here, I realize maybe I should

_____

[6]     For similar reasons, it was not error that the court failed to ask Goitortua if he had identified substitute counsel and how much time they would require to step in. Particularly in light of his comments regarding delay and a mistrial, the judge could fairly assume that defense counsel would have mentioned substitute counsel if they had already been selected.

have continued searching [for a lawyer]."[7]  This is a patently insufficient basis to justify mistrying the case, discharging the jury, and starting again from scratch.

DISPOSITION

The judgment is affirmed.

DATO, J.

WE CONCUR:


HALLER, Acting P. J.


O'ROURKE, J.

---

[7]     Goitortua suggests it is of no help that the judge permitted him to express his concerns *after* stating he would deny the request because the court would have been without power to reconsider its ruling based on a change in its understanding of the facts.  The cases he cites are factually inapposite, but even they recognize that a trial court is permitted to change its procedural rulings during the course of a trial if it later becomes aware of circumstances that would warrant a different ruling.  (See, e.g., *People v. McGee* (1991) 232 Cal.App.3d 620, 627.)  Deciding whether to allow a defendant to replace counsel in the middle of trial is precisely the type of procedural ruling that could be informed by additional facts and circumstances.

10